UNITED STATES of America, Plaintiff-Appellee,

v.

Mark Francis WYNN, Defendant-Appellant.

No. 75–4158.

United States Court of Appeals, Fifth Circuit.

Jan. 3, 1977.

Robert Edward Carrigan, Decatur, Ga. (Court appointed), Robert A. Harper, Jr., Gainesville, Fla., for defendant-appellant.

Nicholas P. Geeker, U. S. Atty., Stewart J. Carrouth, Clifford L. Davis, Asst. U. S. Attys., Tallahassee, Fla., for plaintiff-appellee.

Before GOLDBERG, SIMPSON and GEE, Circuit Judges.

SIMPSON, Circuit Judge:

In response to a citizen's report that marijuana plants were being grown in an open field under some power lines in Hawthorne, Alachua County, Florida, a county law enforcement officer went to the area to investigate. He found 40 to 50 marijuana plants growing approximately 100 yards from an occupied house. He reported his find and went out the next day with another officer to pull the plants up.

While the officers were gathering the plants, appellant, Mark Francis Wynn, Jr., drove up to the house near the field. As the appellant got out of his car, one of the officers called him over and asked him if he owned the house. Appellant said that he did not but that a friend of his was the owner. When asked by the officers if his friend was home, appellant said he did not know but suggested they go to the house and find out. Appellant walked into the house first, followed shortly thereafter by the officers. There were three individuals sleeping in various rooms of the house, and there was marijuana in plain view in various parts of the house. The owner of the home was not present but all other occupants of the house, including appellant, were placed under arrest for violation of a state law regarding possession of marijuana.[1]

At the county jail, an inventory search of Wynn yielded a quantity of counterfeit Federal Reserve Notes.[2] He was subsequently charged by a federal indictment with a violation of Title 18 U.S.Code, Section 472[3], for possessing counterfeit Federal Reserve Notes.

---

1. Appellant was arrested for violation of Fla. Stat.Ann. § 893.03(1)(c)(10), possession of cannabis (marijuana). The arrest was apparently made pursuant to Fla.Stat.Ann., § 893.13(1)(g) which provides: "Notwithstanding any provision to the contrary of the laws of this state relating to arrest, a law enforcement officer may arrest without warrant any person who he has probable cause to believe is violating the provisions of this chapter relating to possession of cannabis."

2. The search yielded sixteen (16) counterfeit twenty-dollar Federal Reserve Notes with serial number C67223012A, and ten (10) counterfeit twenty-dollar Federal Reserve Notes with serial number C70757033A.

3. Title 18 U.S.Code, § 472, reads:

   Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, or counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.

Appellant's motion to suppress the counterfeit notes as products of an unlawful arrest was denied. Appellant was tried before a jury and convicted of the § 472 offense. He was sentenced by the court to confinement for five years. The execution of the sentence was suspended with supervised probation for five years.

The issue on appeal is whether the arresting officers had probable cause to arrest appellant for possession of marijuana, for if the arrest was illegal the conviction which was based on evidence found as a result of that arrest cannot stand.

■ Where arrest is made under a state, rather than a federal, statute, the requisite standard of probable cause for a lawful arrest is determined by state law, provided such law meets federal constitutional standards. *United States v. Romano*, 5 Cir. 1973, 482 F.2d 1183, 1189. *See United States v. DiRe*, 1948, 332 U.S. 581, 589, 68 S.Ct. 222, 226, 92 L.Ed. 210; *Nicholson v. United States*, 5 Cir. 1966, 355 F.2d 80, 83, cert. denied, 384 U.S. 974, 86 S.Ct. 1866, 16 L.Ed.2d 684; *Hart v. United States*, 5 Cir. 1963, 316 F.2d 916, 919.

In *United States v. DiRe, supra*, 332 U.S. at 589–590, 68 S.Ct. at 226, the Supreme Court noted that

in the absence of an applicable federal statute the law of the state where an arrest without warrant takes place determines its validity. By one of the earliest acts of Congress . . . the arrest by judicial process for a federal offense must be 'agreeably to the usual mode of process against offenders in such State.' There is no reason to believe that state law is not an equally appropriate standard by which to test arrests without

warrant, except in those cases where Congress has enacted a federal rule.

Although appellant was prosecuted for a federal offense, he was arrested for a state offense, possession of marijuana in violation of Fla.Stat.Ann., Section 893.03(1)(c)(10). The Florida standard of probable cause governs the validity of the arrest.

■ The Supreme Court of Florida defines probable cause "as a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." *Dunnavant v. State*, Fla.1950, 46 So.2d 871, 874. *See State v. Neri*, D.C.A.Fla. 2, 1974, 290 So.2d 500, 501.[4] Suspicion alone does not constitute probable cause for arrest. *Betancourt v. State*, D.C.A.Fla. 3, 1969, 224 So.2d 378, 380–381.

■ For the arrest in the present case to have been valid, the officers must reasonably have believed that appellant was in possession of the marijuana, the requirement of possession being satisfied by either actual or constructive possession. Actual possession means either one's physical possession or that one has actual personal dominion over the thing allegedly possessed. Constructive possession, on the other hand, occurs when one has knowledge of the thing possessed "coupled with the ability to maintain control over it or reduce it to his physical possession, even though he does not have actual personal dominion." *Spataro v. State*, D.C.A.Fla. 2, 1965, 179 So.2d 873, 877.[5]

In the recent case of *Nast v. Florida*, D.C.A.Fla. 2, 1976, 333 So.2d 103, appellant

---

4. This standard complies with federal constitutional standards. See *Spinelli v. United States*, 1969, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637; *Beck v. Ohio*, 1964, 379 U.S. 89, 91, 85 S.Ct. 223, 226, 13 L.Ed.2d 142; *Brinegar v. United States*, 1948, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879; *Carroll v. United States*, 1925, 267 U.S. 132, 161–162, 45 S.Ct. 280, 288, 69 L.Ed. 543; *Lathers v. United States*, 5 Cir. 1968, 396 F.2d 524, 531.

5. This Court similarly defined constructive possession: "The hallmark of constructive possession is some measure of dominion and control over the contraband." *United States v. Maspero*, 5 Cir. 1974, 496 F.2d 1354, 1359.

The Model Penal Code defines possession generally, Section 2.01(4), as an act which may form the basis of criminal liability "if the possessor knowingly procured or received the thing possessed or was aware of his control thereof for a sufficient period to have been able to terminate his possession."

Nast was sitting on a public bench with a friend when a police officer approached. Appellant's companion took a package he had next to him and threw it over an adjacent seawall. When the package was retrieved, marijuana was found in it. No contraband was found on appellant. The police officer arrested both men for possession of marijuana, and Nast was convicted. The Florida appellate court reversed the conviction, stating:

> In order to establish constructive possession of contraband when the accused does not have exclusive possession of the premises where the contraband is found, actual knowledge of its presence and the ability to control it may not be inferred but must be proven. . . .

> The instant record discloses no evidence on which the arresting officer at the time of the arrest could reasonably conclude that the appellant knew of the presence

of the marijuana or had the ability to reduce it to his possession and control. Britts [the police officer] saw only that the appellant was in a public place in the middle of the afternoon, apparently conversing with an acquaintance who was caught disposing of the contraband.

> We hold that these facts, without more, were insufficient to constitute probable cause for the appellant's warrantless arrest based on constructive possession.

*Id.* at 105. *See Frank v. State,* D.C.A.Fla. 1, 1967, 199 So.2d 117, 120–121.

■ In the present case, the court below stated at the suppression hearing that there was nothing to connect appellant with the marijuana in the residence until appellant admitted having a "coming and going" relationship [6] with the owner of the home. The court denied appellant's motion to suppress solely because of this "coming and going relationship." [7] We disagree with the trial

---

**6.** Appellant denied having said that he had such a relationship with the owner of the residence, Record on Appeal, Vol. I, p. 67, but we assume *arguendo* that the statement was made.

**7.** THE COURT:
[T]he Court, at this time, needs to determine whether there was probable cause for that arrest and, therefore, a valid arrest.
And, I would agree with you, Mr. Harper [appellant's attorney], I could not find that if there was nothing to connect, in the officer's mind, that man with that premises.
But, he connected him right there at the scene. As they were walking toward the house, they were finally connected.
MR. HARPER:
Well, Your Honor, the point is that he can connect him to the premises, but how can he connect him to the corpus delecti of the crime?
THE COURT:
Well, you can connect him to the corpus delecti of the crime by saying, he is good friends of the owner of the premises. He has a coming and going relationship. He has slept there from time to time, and could come and go as he pleased, and apparently had.
MR. HARPER:
But, possession of marijuana, for which he was placed under arrest, requires knowledge, plus dominion and control, either actual or constructive. Now, just because he comes and goes there, does that show that he has any knowledge—any probable cause for any knowledge?
THE COURT:
No.

MR. HARPER:
Okay, sir, then all we can say is that there is some theory of constructive possession—or constructive dominion and control. And, still we have got to get to some point or another where he knows some kind of crime is being committed.
There has got to be an element of intent.
THE COURT:
Well, on that point, now the Government can argue this if it pleases, but it seems to me that everything that was there at the time, on that occasion in question, was in plain view.
MR. HARPER:
Yes, sir. But because I see it, am I guilty? And, because I'm going in there to cooperate with the officers—
THE COURT:
Again, we are talking about the validity of the arrest.
MR. HARPER:
Yes, sir. I'm cooperating with the officers and I'm held with knowledge of what I see by cooperating with the officers is what it amounts to.
THE COURT:
No, I would not think you would be.
MR. HARPER:
Well, that's exactly the case. They say, "come down here", and whistled for him. Now, he sees the plants. He says, "Okay, I will take you up to the owner and we will see." And, he goes into the house.
THE COURT:
Mr. Harper, he has told them that he has a coming and going relationship and that he has

judge's reasoning that Wynn knew of the presence of the marijuana or had the ability to reduce it to his possession and control. *Nast v. Florida, supra,* at 105. To allow probable cause to be established by such a showing would subject appellant to arrest for prior association with persons who allegedly were engaged in nefarious activities or, alternatively, for mere presence in an area where criminal activities were allegedly taking place. No support for either position is to be found in Florida—or federal—jurisprudence.

In *State v. Neri,* D.C.A. 2, Fla.1974, 290 So.2d 500, appellee and his companion were seen by a police officer walking away from an unlighted house late at night. The police officer approached both men and asked for identification because there had been a number of robberies in the surrounding neighborhood. Appellee cooperatively and immediately produced an I.D. card and tendered it to the policeman for inspection.

His companion told the officer that his identification was in his car. As appellee's companion opened the glove compartment to his car to get his identification, the officer noticed marijuana therein. He then arrested both appellee and his companion. As appellee got into the police car, the officer saw him drop a small quantity of marijuana, which appellee later admitted possessing. The trial judge granted appellee's motion to suppress, finding, among other things, that the automobile belonged to appellee's companion and its contents provided no basis for the arrest of appellee. The trial court judgment was affirmed on appeal, the appellate court holding that there was no probable cause for the police officer to infer possession of the marijuana by appellee. Since the arrest was not based on probable cause, it was an illegal arrest which tainted and poisoned "the rest of the fruits derived subsequent to the unlawful arrest, including the evidence found on him, the confession and the officer's testimony

been there and he has slept there and can come and go as he pleases and has been there from time to time.

MR. HARPER:
But, that doesn't connect him to the plants or to the corpus delecti of the crime at all. It connects him to the premises, fine. But, not to the fact that the crime is being committed or was committed.

It's nothing to connect him to the corpus delecti to the plants, or to anything seen inside that house.

THE COURT:
We are talking about the validity of the arrest.

MR. HARPER:
Yes, sir, but to meet the validity of the arrest, you have got to have some reasonable connections made by the officers to connect him to the proceeds of that crime, whether it's a robbery, a murder, or possession of marijuana.

THE COURT:
Well, there are things to support you and speak to this non-awareness. For instance, there is the voluntariness of his offering to the officers to "come go with him and they would find out." Would he, if he had knowledge of what was in there, wouldn't he have invited the officers to come go with him.

This speaks strongly for you and strongly for him. I understand that.

MR. HARPER:
That's the whole point. The whole thing has been a matter of merely cooperating with the officers.

THE COURT:
But, what happened at the point before they went in to the house? They come upon the knowledge that he is a frequenter of that house and that he lives there on occasion, he sleeps there on occasion, he has a coming and going right, and can come and go as he pleases.

It seems to me, under those circumstances, that you do have a valid arrest.

\*    \*    \*    \*    \*    \*

He went up to the house—Officer Bailey testified he went up to the house to see if they could find out something about who owned the field and who has the comings and goings and you know what happened, apparently, was exactly what the officers testified developed.

As they walked up with Wynn, they found out that he was a comer and a goer, and that he did sleep there on occasion and was there on occasion. And, they walked and saw, in plain view, what was there. Now, that's the only reason, and if I am wrong, the Court of Appeals will certainly tell me so, that is the only reason I can see that the arrest is valid and is good. Otherwise, I would agree with you.

If, in fact, Wynn had not let them know that he had coming and going privileges and that he had, in fact, been there and he came and went as he pleased and that he was a good friend of the owner of the premises, and had that tie, and the officers, had they not known that, then I would agree with you.

But, on that point alone, I would say that makes the arrest valid.

Supp. Record on Appeal, pp. 60–66.

on what he saw or heard during the arrest procedure." Id. at 502. *See Spears v. State*, D.C.A.Fla. 2, 1974, 302 So.2d 805; *Betancourt v. State, supra, Spataro v. State, supra*, 179 So.2d at 877.

■ We are satisfied that the present case is governed by the listed Florida cases. We find in the evidence no reasonable basis for a belief by the state officers that appellant was in either actual or constructive possession of the marijuana. His offense was no more than selecting an unfortunate time to visit his friend. Wynn's possession of the contraband exceeded only slightly (if at all) that of the police officers who accompanied him into the house. A contrary holding would exalt mere presence to a sufficient basis for an arrest for a crime of possession. The Supreme Court has held that presence alone, unilluminated by other facts, is insufficient proof of possession. *United States v. Romano*, 1965, 382 U.S. 136, 141, 86 S.Ct. 279, 282, 15 L.Ed.2d 210. Appellant's "coming and going" relationship with the owner of the residence where the contraband was found may not be extrapolated into establishing any greater probability of possession than would be furnished by mere proximity to the thing allegedly possessed. The crime charged was of course one of possession of contraband. The probability of possession by Wynn in the present case was an insufficient basis for a legal arrest.

■ It is black letter law that an illegal arrest taints any evidence discovered as a direct result of that arrest. Such "fruit of the poisonous tree" may not support a conviction. *Wong Sun v. United States*, 1963, 371 U.S. 471, 485, 488, 83 S.Ct. 407, 416, 417, 9 L.Ed.2d 441; *Benefield v. State*, Fla.1964, 160 So.2d 706, 708; *State v. Neri, supra*, 290 So.2d at 502. Since the evidence forming the basis for Wynn's conviction of possessing counterfeit money was the direct product of his illegal arrest, Wynn's Motion to Suppress that evidence should have been granted. Suppression of the evidence seized would have left nothing in the prosecution's case for submission to the jury, requiring that judgment of acquittal be directed by the trial judge.[8]

The judgment appealed from is, on the foregoing grounds,

REVERSED.

8. Defendant moved for judgment of acquittal at the close of the government's case and renewed such motion after both sides had announced closed.