**Michael CANFIELD, Plaintiff-Appellee,**

v.

**Game Warden CHAPPEL, Individually and as a game warden for the Texas Parks and Wildlife Department, Defendant-Appellant.**

No. 86–1627.

United States Court of Appeals, Fifth Circuit.

May 29, 1987.

Adrian L. Young, Jim Mattox, Atty. Gen., Austin, Tex., for defendant-appellant.

Gregory W. Canfield, San Antonio, Tex., for plaintiff-appellee.

Before POLITZ, JOLLY, and HIGGINBOTHAM, Circuit Judges.

POLITZ, Circuit Judge:

Invoking constitutional claims under 42 U.S.C. § 1983, and pendent state law claims, Michael Canfield filed suit against Wayne Chappel, a Game Warden of the Texas Parks and Wildlife Department. The issue presented to the jury was whether Game Warden Chappel had probable cause to arrest Canfield for failing to display a hunting license while hunting outside the county of his residence. The jury concluded that probable cause for the warrantless arrest did not exist and returned a verdict in favor of Canfield. The district court assessed attorney's fees. A motion for judgment n.o.v. was denied. We affirm.

### Background

On November 13, 1982, Canfield and several of his friends embarked on a canoeing and camping outing on the Brazos River in Palo Pinto County, Texas. Shortly before noon they beached their canoes and made camp on public property on the riverbank adjacent to the Harris Ranch. It was the opening day of deer season and several hunters with a hunting lease on the Harris Ranch had gathered to pursue the elusive White Tail. Canfield took a .22 calibre rifle belonging to one of his companions, walked a short distance from the campsite, and fired several rounds. His testimony was that he fired in the air and at cans and other targets while standing on public property. Testimony of the hunters placed Canfield a few feet inside the Harris Ranch. A bullet was said to have coursed through the leaves of the trees above the hunters. One hunter testified that he observed Canfield aiming at shoulder level but did not see him actually fire the weapon, nor did he see any game in the direction in which Canfield was pointing the gun.

The hunters accosted Canfield who maintained that he was within his rights to be where he was, on public property. The hunters thought otherwise and advised Canfield that he and his colleagues should immediately break camp and depart the area. The campers demurred.

From this point the evidence varies little. The hunters complained to their ranchowner-lessor, Jennie Germany, that someone was trespassing on the ranch and she called Game Warden Chappel. Several hours later Chappel came to the ranch and spoke with the hunters and Ms. Germany. Then, accompanied by some of the hunters, Chappel and his son drove to a point on the Harris Ranch above the campsite on the riverbank and placed the campers under surveillance. None of the campers was hunting, shooting, or handling a gun; they were simply camping. Canfield was identified by the hunters and Chappel approached the camp, followed shortly by the hunters. After identifying himself, Chappel examined the .22 rifle and a 12 gauge shotgun lying in plain view. He then inspected the campsite, boats, and the personal possessions of the campers, but found no game, fish or other evidence that anyone had been hunting. Chappel testified that he noted a small quantity of fairly fresh blood on the barrel of the rifle.

Chappel then asked the campers for hunting licenses and other identification. Canfield could produce neither because he had left his wallet in his auto, which he had originally planned to drive on the trip. Canfield's hunting license and other identification were in his wallet. When Canfield could not produce a hunting license he was charged with failing to demonstrate a hunting license while hunting outside the county of his residence. Because he had no

identification on him, the usual citation was not issued; instead he was arrested and taken into custody by Chappel. Canfield was first taken to the ranch house where Chappel asked Ms. Germany if she wished to file trespass charges. She agreed to do so and followed Chappel as he transported Canfield to a Justice of the Peace in Possum Kingdom.

Canfield was charged with failing to display a license, when asked to do so, while hunting in a county other than that of his residence. He was also charged with hunting on the land of another without permission. Canfield tried to explain the situation but the Justice of the Peace wanted only a plea of guilty or not guilty; explanations were neither sought nor permitted. Canfield pleaded guilty and was fined $85 on each charge and, when he could not produce the cash, he was committed to the county jail. Canfield spent the night in jail. The next day one of his camping companions was able to cash a check and pay the fines and Canfield was released.

### Analysis

■ The fourth amendment protects against unreasonable arrests. A valid arrest may be made pursuant to a warrant issued by a detached and neutral magistrate upon a determination that probable cause exists for its issuance. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Giordenello v. United States,* 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). The Supreme Court has defined probable cause as "facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *Gerstein v. Pugh,* 420 U.S. 103, 111, 95 S.Ct. 854, 861–62, 43 L.Ed.2d 54 (1975) (*citing Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)).

■ Warrantless arrests for felonies are permitted in certain instances. With reference to misdemeanor arrests in Texas, as we observed and held in *Bodzin v. City of Dallas,* 768 F.2d 722, 724 (5th Cir.1985):

A warrantless arrest violates a suspect's Fourth and Fourteenth Amendment rights if the arresting officer lacks probable cause to believe that the suspect has committed a crime. *Trejo v. Perez,* 693 F.2d 482, 488 & n. 10 (5th Cir.1982). Under Texas law, for a warrantless misdemeanor arrest to be valid, the officer must have probable cause to believe that the suspect has committed a crime *in his presence. Carlock v. State,* 609 S.W.2d 787, 790 (Tex.Crim.App.1980) [emphasis in original]; Tex.Code Crim. Proc. art. 14.01(b) (Vernon 1977).

Article 14.01(b) of the Texas Code of Criminal Procedure provides:

A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view.

*See Kelley v. State,* 676 S.W.2d 646 (Tex. Ct.App.1984).

■ The factual issue presented to the jury was whether Warden Chappel had probable cause to believe that Canfield was hunting. The standard to be applied to Chappel's actions is one of objective reasonableness. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

■ Evidence adduced at trial unequivocally established that during the entire time Warden Chappel had the camp and the campers in view, there was no indication whatever of hunting activity; neither wild game nor other signs of hunting were found in or near the camp. The campsite was on the riverbank on public property. Chappel acted solely on the strength of what the hunters told him they had seen several hours before, and on a spot of blood on the rifle which no other witness saw.

In performing its classic fact-finding function, the jury weighed conflicting testimony and made credibility choices. The record contains sufficient evidence to support the jury's finding that there was no probable cause to believe that Canfield was hunting when Game Warden Chappel arrested him for failing to display a hunting license. *Boeing Company v. Shipman,*

411 F.2d 365 (5th Cir.1969) (en banc). No witness claimed to have seen Canfield hunting. Shots were heard, one missile purportedly "whistled" through the trees over the heads of the hunters. One hunter saw Canfield hold the rifle out as if he were prepared to shoot, but Canfield did not shoot. No one saw any game that might have been the subject of Canfield's aiming or shooting. In sum, no evidence was offered which tended to refute Canfield's testimony that he was merely shooting for target practice.

Hunting requires a license in Texas, as in all American jurisdictions known to the court. Target shooting does not require a hunting license in Texas. Chappel did not see Canfield hunting or shooting, but acted on the statements of two hunters, one of whom freely admitted that he was angry because Canfield was spoiling their hunting, and the other who voiced consternation at the campers' presence and presumed to suggest that they should promptly dismantle their camp, located on public property, and move away so as not to disturb their hunting. Even viewed in the light most favorable to Chappel, a standard obviously not applicable herein, the statements made to Chappel suggested only that Canfield was shooting a .22 rifle at an unknown target or targets.

If a game warden were informed of a person deep in the woods, off the beaten path, dressed in camouflage and firing a gun on the opening day of hunting season, it might be reasonable for the warden to assume that the person was hunting. But not so for a mere report that a canoer/camper fired a small calibre gun on or immediately next to the riverbank where his canoe and campsite were located. And in both instances, the Texas law requirement that a warrantless misdemeanor arrest may be made only for an offense occurring within the presence or view of the officer, would apply.[1]

The evidence supports the jury's finding that Game Warden Chappel did not have probable cause to believe that Canfield was hunting when he made a warrantless arrest of Canfield on November 13, 1982, for the misdemeanor offense of failing to display a license while hunting outside the county of his residence. The court did not err in denying defendant's motion for judgment n.o.v.

AFFIRMED.

---

**1.** We are not confronted with and do not decide today the more difficult question whether the fourth amendment confines a warrantless arrest for a misdemeanor to an offense committed within the officer's presence or view. The Texas statute imposes that limitation and the district court, without objection, instructed the jury accordingly.