Paula Jean **FIELDS, Individually, on behalf of the children and parents of Otis Roy Fields, and as Independent Administratix of the Estate of Otis Roy Fields, Plaintiff–Appellant,**

v.

**CITY OF SOUTH HOUSTON, TEXAS and Ernest Long, Individually, and in his Official Capacity as a Police Officer of the City of South Houston, Texas, Defendants–Appellees.**

No. 90–2220.

United States Court of Appeals, Fifth Circuit.

Feb. 1, 1991.

Rehearing Denied March 21, 1991.

Mary L. Sinderson, Houston, Tex., for plaintiff-appellant.

William S. Helfand, Kathleen Walsh Beirne, Jay D. Hirsch, Hirsch, Glover, Robinson & Sheiness, Houston, Tex., for defendants-appellees.

Before GARWOOD and WIENER, Circuit Judges and VELA[1], District Judge.

VELA, District Judge:

Otis Fields was arrested by a police officer of the City of South Houston and subsequently died. His widow, Mrs. Fields, filed suit alleging that his death and physical injuries suffered prior to his death were

a result of the practices of the City of South Houston and its officials. She sought damages under federal (42 U.S.C. § 1983) and state laws.

The district court granted summary judgment on the federal claims in favor of Officer Long and the City of South Houston on the basis of qualified immunity. The state claims were remanded to Harris County District Court. Finding the City is not entitled to qualified immunity, we reverse this determination. Deciding further that there are genuine issues of material fact on the excessive force and denial of medical attention issues we reverse and remand these issues for trial on the merits. Because federal standards apply to the determination of "false arrest" in a § 1983 action, we uphold the grant of summary judgment on the "false arrest" issue.

## THE THREE LITTLE SETS OF FACT AND THEIR LOWER COURT PROCEEDINGS

### *The Undisputed Facts*

The undisputed facts paint, at best, a sketchy picture.' Early in the morning of August 21, 1986, the police department of the City of South Houston received a telephone complaint that "there was a man running around an apartment complex with no clothes on," and police officer Ernest Long was dispatched to the complex on 410 Perez Street. When Officer Long arrived at the complex, the owner, Mr. Percy Lampin, and two other residents, Mr. and Mrs. Henry Mitchell, confirmed that Mr. Otis Roy Fields ("Fields") was the man they had seen naked. At that time, however, Fields was fully clothed and was "slumped over" in the passenger seat of a pickup truck, with his wife in the driver's seat. After questioning Mrs. Fields ("Plaintiff") briefly, Officer Long arrested Mr. Fields, took him to the station, booked him and placed him in a jail cell. Officer Long asked Lampin to come to the police station to swear out a complaint against Fields, but Henry Mitchell volunteered instead. The charges against Mr. Fields were public exposure

---

1. District Judge of the Southern District of Texas, sitting by designation.

and public intoxication. At 7:28 a.m. on August 22, 1986, paramedics were summoned to the jail, where they found Fields comatose. Fields was transported to the hospital, where he died shortly afterward. The cause of death was bacterial endocarditis, a heart infection.

### Plaintiff's Facts

From her deposition, Plaintiff's version of the events of August 21–22 is as follows. About three days prior to his arrest, Fields began running a fever and gradually got sicker. On the morning of August 21, Plaintiff left for work at 6:50 a.m. About one hour later she received a call from her baby-sitter, Jackie Mitchell, telling her that Mr. Fields had come to Mitchell's apartment naked to call his wife, and that Fields was very sick and needed to go to the hospital. Mrs. Fields went to the Mitchells' apartment, dressed her husband and put him in the truck to take him to the hospital. Just before she could leave, Officer Long arrived and began questioning her about Mr. Fields's condition. Plaintiff stated that Fields was very sick and that she was taking him to the hospital. Officer Long asked Fields if he was drunk; Fields did not answer. Officer Long also asked whether Fields had taken drugs, and Fields responded that he thought he might have taken two quaaludes the night before. Officer Long asked whether Plaintiff was taking Fields to the hospital, and Plaintiff confirmed she was. Officer Long, however, said that Fields was going to jail instead. Plaintiff and Officer Long had to assist the weak Fields out of the truck and into the police car.

Mrs. Fields further claims that, after the arrest, she went to the police station and entreated the officers to give Fields medical attention. The officers told Plaintiff not to worry because they would take care of him. Mrs. Fields's request to see her husband was denied. The next time Plaintiff saw Fields was August 22 at the hospital, at which time Fields exhibited signs of physical trauma.

### Defendants' Facts

Defendants' version of the story is, understandably, quite different. Officer Long maintains that when he saw Fields in the truck, Fields appeared to be quite intoxicated; this observation was supported by Lampin. Officer Long questioned Plaintiff about Fields's drug use, and determined that Fields had taken some drugs (quaaludes) recently. When Officer Long asked whether Plaintiff was taking Fields to the hospital, Plaintiff responded that she had to get back to work and was taking Fields to a friend's house. Officer Long arrested Fields on the basis of the perception that Fields was intoxicated, and based on the reports of public exposure and Mitchell's written complaint made at the police station later.

After arriving at the station, Officer Long purportedly had Fields help him complete the paperwork. Officer Long contends that Fields appeared intoxicated but not "out of control." Mr. Fields was not mistreated in any way. Defendants concede that Plaintiff visited the station after the arrest, but they assert that her concern was about her potential parole violation and not medical attention for Fields. Officer Long stated that he made three trips to the jail to check on Fields "in order to determine that he was okay," actions Plaintiff claims are unusual.[2] On the morning of August 22, Officer Long saw Fields sitting on his bunk at 6:30 a.m. About an hour later, Officer Long was advised of the ambulance call to the jail, and when he returned there, he saw Fields on a stretcher with his shirt open and no sign of physical trauma.

Defendants have produced the affidavits of two pathologists, one of whom performed the autopsy of Fields's body. Both stated that the cause of death was bacterial endocarditis, that the mortality rate is 40%, and that Fields would have died even if Plaintiff had taken him directly to the hos-

**2.** Mrs. Fields submitted affidavit testimony that drunks are usually confined for a four-hour "sobering-up" period; in addition, officers are apparently directed not to visit the jail and especially do not check on people who are arrested for public intoxication.

pital on the morning of August 21. Even if Fields did not die, the pathologists maintain, he would have remained in a vegetative state. Further, the pathologists explained that the average "lay person" would not be able to determine the difference between alcohol or drug-induced behavior and behavior caused by Fields' disease.

### Proceedings Below

As a result of the events described above, Plaintiff brought suit in Texas state court on August 2, 1988 against Officer Long and the City of South Houston ("the City"), seeking damages under state and federal laws. Plaintiff's federal claims are based on 42 U.S.C. § 1983; specifically, that the actions of Officer Long and all other city employees or agents were taken under color of laws of the State of Texas and of the City of South Houston, and were taken pursuant to official policy or custom of the defendant-City, which resulted in the deprivation of constitutional rights. The district court, after a series of procedural events to be discussed later, granted summary judgment in favor of both defendants.

On appeal, Plaintiff claims the "sole point of error" is that the district court erroneously granted summary judgment for Defendants when material issues of disputed fact remain. Defendants respond that Plaintiff's summary judgment "proof" was not timely filed, was not before the district court when it considered the motion for summary judgment and thus cannot be considered by this court. Second, even if Plaintiff's "proof" is properly considered, Defendants maintain they have established qualified immunity as a matter of law.

### SUMMARY JUDGMENT LAW

■ "Review of a district court's ruling on a motion for summary judgment is plenary." *Lavespere v. Niagara Mach. & Tool Works*, 910 F.2d 167, 177 (5th Cir. 1990). "The appeals court applies the same

standards as those that govern the district court's determination." *Id.* "Summary judgment is appropriate only if there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). To determine whether there are any genuine issues of material fact, the court must first consult the applicable law to ascertain what factual issues are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). After that, the court must review the evidence bearing on those issues, viewing the facts and inferences in the light most favorable to the nonmoving party. *Lavespere*, 910 F.2d at 178.

■ In a summary judgment, the rules governing burden of proof are extremely important. The moving party bears the burden of establishing there are no genuine issues of material fact. *Lavespere*, 910 F.2d at 178. Once the moving party makes that showing, however, the burden shifts to the nonmoving party to show that summary judgment is not appropriate. *Id.* The nonmoving party cannot discharge that burden by referring to the "mere allegations or denials" of his pleadings; rather, that party must, either by submitting opposing evidentiary documents or by referring to evidentiary documents already in the record, set out specific facts showing that a genuine issue exists. Fed.R.Civ.P. 56(e). If the opposing party does not so respond, summary judgment, if appropriate, may be entered against the opposing party.

### THE PROCEDURAL DILEMMA

■ Defendants filed a motion for summary judgment on December 4, 1989. On January 8, 1990, outside the time for response prescribed by the local rules[3], Plaintiff requested an extension of time to respond to Defendants' motion. On January 17, the district court granted the Defendants' motion on the basis of qualified

---

**3.** The local rules of the Southern District of Texas required Plaintiff to file her summary

judgment proof by December 26, 1989.

immunity, apparently without the benefit of Plaintiff's later-filed affidavits. On January 18, the district court denied Plaintiff's motion for an extension of time as untimely, but "in the interest of justice," treated the motion as a request for new trial or for reconsideration. Plaintiff was directed to respond by January 22. On January 22, Plaintiff filed her Memorandum of Authorities in Support of Motion for New Trial or Alternatively, Motion for Reconsideration and attached many pages of affidavits, etc., as "proof." In its order signed January 26, the district court denied Plaintiff's motion for new trial and remanded the state law claims to state district court. Final judgment was entered in favor of the defendants on January 30, 1990. Defendants contend that Plaintiff's "proof" was not timely filed, was not before the district court when it considered the motion for summary judgment and consequently cannot be considered by this court. We disagree with the defendants' assertion and conclude that the Plaintiff's summary judgment evidence is properly before our court.

■ "[M]aterials not presented to the district court for consideration of a motion for summary judgment are never properly before the reviewing court." *John v. State of La.*, 757 F.2d 698, 710 (5th Cir.1990). Fields's motion for extension was treated by the district court as a Motion for New Trial, or in the alternative, for Reconsideration. A losing party may appeal from a final order granting summary judgment or seek reconsideration of the summary judgment under Rule 59(e) in the trial court. *See Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990). If the party seeking reconsideration submits additional materials, the trial court may consider those materials in its discretion. *See id.* at 172–75. If the lower court does consider the materials and still grants summary judgment to the moving party, the appellate court may review all of the materials *de novo*. *See id.* at 177–78. On the other hand, if the district court refuses to consider the materials, the reviewing court applies the abuse of discretion standard.

We find that the district court *in fact* granted Fields a chance to respond to the summary judgment motion and considered the materials. Several facts support this conclusion. On January 17, 1990, the district court signed an order which stated "[i]t is ORDERED that summary judgment is entered with respect to all claims of the plaintiff, as against the defendants." Later, on January 18, 1990, the court entered an order stating "[t]he plaintiff's motion for an extension of time to respond to the defendants' motion for summary judgment is untimely." The order of January 18 further stated the court was going to treat the motion for an extension "as a request for a new trial or for reconsideration" and required the plaintiff to respond by January 22. A January 26 order denied the plaintiff's motion for new trial and remanded Fields's state law claims to Harris County District Court. Another document entered January 26, 1990, recited that the motion for new trial was denied, plaintiff shall take nothing on the federal constitutional claims and that the document constituted a final judgment.

The district court made no express statement that it was not considering the plaintiff's additional proof in denying the motion for new trial. Summary judgment was entered on January 17. Federal Rule of Civil Procedure 59(b) allows 10 days after the entry of judgment in which to file a motion for new trial. The January 18 order required Fields to respond by January 22. We construe these actions as meaning that the lower court desired the plaintiff's "proof" to determine whether the grant of summary judgment should be reversed. The 22nd of January was a Monday and the 26th a Friday. This gave the trial judge the week to review the evidence and reaffirm his decision. Because he reviewed the evidence, and there is nothing in the record to indicate he did not review this evidence, it is properly before us and we review all of the evidence *de novo*. *See Puckett v. Rufenacht, Bromagen & Hertz, Inc.*, 903 F.2d 1014, 1015–16 (5th Cir.1990). The district judge knows the procedural rules as well as (if not better than) any of us, if he did not consider the evidence he would have

stated this in the record so that our review would also be confined.

## SECTION 1983 WARRANTLESS ARRESTS WHAT LAW TO APPLY: STATE OR FEDERAL?

■ Initially, we must decide if state or federal law governs the law of arrest in a § 1983 action. Officer Long arrested Mr. Fields for public intoxication[4] and public exposure[5] both of which constitute misdemeanors in Texas. A Texas police officer may arrest an individual without a warrant only if (1) there is probable cause with respect to that individual and (2) the arrest falls within one of the exceptions in articles 14.01 through 14.04 of the Texas Code of Criminal Procedure. *Stull v. State*, 772 S.W.2d 449, 451 (Tex.Crim.App.1989) (en banc). Since both offenses were Class C misdemeanors, the relevant exception is article 14.01(b) which provides: "[a] peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view." Tex.Code of Crim.Proc.Ann. art. 14.01 (Vernon 1977).

■ Even though Officer Fields had probable cause to arrest Mr. Fields, *see infra*, none of the exceptions for warrantless arrests in Texas seem applicable. The offense was not committed in Long's presence. Mr. Fields was fully clothed when the officer arrived. Nevertheless, the arrest was valid under federal constitutional principles. The United States Constitution does not require a warrant for misdemeanors not occurring in the presence of the arresting officer. *Street v. Surdyka*, 492 F.2d 368, 371–72 (4th Cir.1974). For the reasons set forth by our brothers in the Fourth Circuit, we hold "there is no cause of action for 'false arrest' under section 1983 unless the arresting officer lacked probable cause." *Id.* at 372–73. Accordingly, a federal civil rights action will not lie for a warrantless misdemeanor arrest in violation of state law. Section 1983 is a federally created cause of action to redress civil rights violations. "The states are free to impose greater restrictions on arrests, but their citizens do not thereby acquire a greater federal right."[6] *Id.* at 372.

"[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983). Under the facts as we see them, Officer Long had sufficient probable cause to make the arrest under the federal constitution and a § 1983 cause of action[7]

---

4. Section 42.08(a) of the Texas Penal Code defines the offense of public intoxication as an "appear[ance] in a public place under the influence of alcohol or any other substance, to the degree that the individual may endanger himself or another." The offense is a Class C misdemeanor. Tex.Penal Code Ann. § 42.08(h) (Vernon 1989).

5. The offense of public exposure is committed if an individual knowingly or intentionally "exposes his anus or genitals in a public place and is reckless about whether another may be present who will be offended or alarmed by his act." Tex.Penal Code Ann. § 42.01(a)(12) (Vernon 1989). This offense is also a Class C misdemeanor. *Id.* at § 42.01(d).

6. Although *Bodzin v. City of Dallas*, 768 F.2d 722, 724 (5th Cir.1985) and *Canfield v. Chappel*, 817 F.2d 1166, 1169 (5th Cir.1987) seem contrary to our decision, they are horses of a different color. Neither decision dealt with the issue present here, that probable cause is sufficient but a Texas exception for warrantless arrest is lacking. *Bodzin* found both probable cause and an exception to be present. *Canfield*, on the other hand, found probable cause to be lacking. In fact, *Canfield*, stated that it was not deciding "the more difficult question whether the fourth amendment confines a warrantless arrest for a misdemeanor to an offense committed within an officer's presence or view." *Canfield*, 817 F.2d at 1169 n. 1. Hence, our opinion is in accord with both of these prior decisions. Additionally, we add that our thinking is in line with the most recent decision of *Pfannstiel v. City of Marion*, 918 F.2d 1178 (5th Cir.1990), which involved an arrest by Texas officials. *Pfannstiel* stated that "[p]robable cause is a defense to a § 1983 claim based on an alleged false arrest." *Id.* at 1183.

7. In a number of criminal conviction direct appeals we have looked to state law to determine the validity of the arrest when ruling on a suppression issue. *See, e.g., United States v. Robinson*, 650 F.2d 537, 539 (5th Cir.1981) (without discussion); *United States v. Wynn*, 544 F.2d 786, 788 (5th Cir.1977); *Collins v. United States*, 289 F.2d 129, 131 (5th Cir.1961). In none of these cases is it clear that it made any difference to the outcome that state law, instead

does not arise from this particular occurrence. Consequently, the lower court properly granted summary judgment on this issue and we need not reach the issue of qualified immunity.

of Fourth Amendment standards, was applied. Moreover, these opinions, to the extent that they address the problem, seem to be based on the Supreme Court's opinion in *United States v. Di Re,* 332 U.S. 581, 587–92, 68 S.Ct. 222, 225–27, 92 L.Ed. 210 (1948), likewise a direct criminal appeal. In *Street,* the Fourth Circuit stated that the reliance in this respect on state law in *Di Re* and related cases "seems clearly to be based on nonconstitutional considerations." *Street,* 492 F.2d at 372 n. 7. A noted commentator agrees. *See* LaFave, *Search and Seizure* § 1.5(b) at 107 (2d ed. 1987) ("*Di Re* is simply an instance of the court utilizing its supervisory power to exclude from a federal prosecution evidence obtained pursuant to an illegal but constitutional arrest, [and] . . . the Fourth Amendment does not stand in the way of" a states refusal to exclude evidence resulting from an arrest that was illegal under state law but not contrary to the Fourth Amendment); *id.* § 1.5(c) at 112–13 ("The argument that 'local rules . . . will have constitutional sanction, for whatever action is illegal is perforce unreasonable,' has not prevailed. . . . So too, if either federal or state officers conduct a search that is illegal under the law of the state where undertaken, the fruits thereof are not constitutionally barred from evidence in federal courts") (footnotes omitted); *id.* § 5.1(b) at 405 ("There thus would appear to be no Fourth Amendment barrier to a state court holding, as a few have, that the exclusionary rule will not be utilized to deter violation of state statutory provisions limiting warrantless arrests") (footnote omitted).

This view seems to be confirmed by the Supreme Court's subsequent decision in *California v. Greenwood,* 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988), where the Court rejected a claim that the United States Constitution mandated suppression of evidence resulting from a warrantless search and seizure of defendant's garbage that was improper only in the sense that it was illegal under California law, stated in part as follows:

> We reject respondent Greenwood's alternative argument for affirmance: that his expectation of privacy in his garbage should be deemed reasonable as a matter of federal constitutional law because the warrantless search and seizure of his garbage was impermissible as a matter of California law. . . .
>
> Individual states may surely construe their own constitutions as imposing more stringent constraints on police conduct than does the Federal Constitution. We have never intimated, however, that whether or not a search is reasonable within the meaning of the Fourth Amendment depends on the law of the particular State in which the search occurs. We have emphasized instead that the Fourth Amendment analysis must turn on such factors as "our *societal* understanding that certain areas deserve the most scrupulous protection from government invasion." *Oliver v. United States,* 466 U.S. [170], at 178, 104 S.Ct. [1735], at 1741 [80 L.Ed.2d 214 (1984)] (emphasis added). . . . We have already concluded that society as a whole possesses no such understanding with regard to garbage left for collection at the side of a public street. Respondent's argument is no less than a suggestion that concepts of privacy under the laws of each State are to determine the reach of the Fourth Amendment. We do not accept this submission." *Id.* 108 S.Ct. at 1630–31.

If our criminal case decisions such as *Wynn* have any remaining validity after *Greenwood,* it can only be on a nonconstitutional basis (although *United States v. Payner,* 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980), may cast doubt on that also). In these circumstances, we decline to import the *Wynn* line of cases from the criminal appeal context to the present issue, a federally created civil cause of action for violation of rights secured by the constitution and laws of the United States.

## EXCESSIVE FORCE [8]

 Mr. Fields suffered significant physical trauma [9] between the time of the arrest and his death the next day. Defen-

**8.** Because these events took place in 1986, the standard for excessive force to be applied is NOT *Johnson v. Morel,* 876 F.2d 477 (5th Cir. 1989) (en banc), but rather *Shillingford v. Holmes,* 634 F.2d 263 (5th Cir. Unit A Jan. 1981). *Pfannstiel v. City of Marion,* 918 F.2d 1178 (5th Cir.1990) made clear that "the objective reasonableness of an official's conduct must be measured with reference to the law as it existed at the time of the conduct in question." *Id.* at 1185 (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982)). Since *Shillingford* was the law at the time of these events, it is to be applied at the trial of this issue on remand.

**9.** Mrs. Fields testified in her deposition that her husband suffered physical injury between the time she saw him at their home and the time she next saw him at the hospital. She testified that when she saw his body at the hospital he had severe bruising on the eyes, neck, chest, stomach, knees, fingers, feet and arms and was also bleeding from his left ear. The external appearance of the body recorded in the autopsy report corroborates this testimony. Dr. Joseph A. Jachimczyk, the chief medical examiner of Harris County, Texas, and an assistant, performed the autopsy. Dr. Jachimczyk filed an affidavit verifying the correctness of this autopsy. The affidavit, along with the business record exception to the hearsay rule, Fed.R.

dants deny any use of force and point to evidence obtained from the EMS paramedic who saw Fields at the jail and that he had not been injured before being transported to the hospital. On the evidence submitted thus far, neither party can prove who is responsible for these injuries. Officer Long denies using any force on Fields. Nevertheless, the fact remains that someone or something caused injury to Mr. Fields. There is a genuine issue as to how these injuries were inflicted. *See* Fed.R. Civ.P. 56(c). Accordingly, summary judgment should not have been granted on this issue. We remand the excessive force claim to the lower court for trial on the merits.

## THE DENIAL OF MEDICAL ATTENTION

A denial of medical care by a pretrial detainee alleges a deprivation of due process under the Fourteenth Amendment. *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1186 (5th Cir.1990). In *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 1871–72, 60 L.Ed.2d 447 (1979), the Supreme Court expressed that the appropriate inquiry in denial of medical attention cases involving pretrial detainees is whether the conditions of detention amount to punishment. This court has stated that pretrial detainees are entitled "to reasonable medical care unless the failure to supply it is reasonably related to a legitimate government objective." *Jones v. Diamond*, 636 F.2d 1364, 1378 (5th Cir.) (en banc), *cert. dismissed sub nom., Ledbetter v. Jones*, 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981), *overruled in part on other grounds by, International Woodworkers of Am., AFL–CIO and its Local No. 5–376 v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir.1986). Thus, the inquiry on remand "is whether the denial of medical care was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees." *Pfannstiel*, 918 F.2d at 1186.

Evid. 803(6), would allow both us and the district court to properly consider the autopsy re-

Accepting Mrs. Fields's version of the facts as true, Officer Long was on notice that Mr. Fields was ill and needed medical attention. The officer himself even stated he continued to check on the decedent to assure he was alright. Although qualified immunity may absolve Officer Fields at trial, there are too many possibilities to uphold the grant of summary judgment. Let the jury hear the testimony and make the determinations. There is more than a genuine issue as to the denial of medical care issue. *See* Fed.R. Civ.P. 56(c). Accordingly, the grant of summary judgment is reversed on this issue and the case remanded for trial on the merits.

## QUALIFIED IMMUNITY AND THE CITY OF SOUTH HOUSTON—LIKE OIL AND WATER, THEY JUST DON'T MIX

The district court held both defendants were entitled to summary judgment on the ground of qualified immunity. Despite this, the City of South Houston was not entitled to qualified immunity as the Supreme Court has held. *Owen v. City of Independence*, 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980), expressly rejected qualified immunity for municipalities in § 1983 cases.

> [T]here is no tradition of [q]ualified immunity for municipal corporations, and neither history nor policy supports a construction of § 1983 that would justify the qualified immunity accorded the city.... We hold, therefore, that the municipality may not assert the good faith of its officers or agents as a defense to liability under § 1983.

*Id.* Our court has stated the rule for imposition of municipal liability under § 1983 as follows: "A municipality is liable under § 1983 for a deprivation of rights protected by the Constitution or federal laws that is inflicted pursuant to official policy." *Webster v. City of Houston*, 735 F.2d 838, 841

port under Fed.R.Civ.P. 56(c) and Fed.R.Civ.P. 56(e).

(5th Cir.1984) (en banc). Official policy includes "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.*

Mrs. Fields has raised genuine issues of fact going to the City's liability. Her affidavits tend to establish the existence of tacit City approval for unconstitutional practices.[10] Consequently, the grant of summary judgment in favor of the City of South Houston is reversed.

## AND NOW WE END

In conclusion, the proper standard was applied by the district court in determining the validity of an arrest in a § 1983 action. The judgment is AFFIRMED on the "false arrest" claim. Because genuine issues of material fact remain on the excessive force and denial of medical attention issues, we REVERSE the judgment on these issues and REMAND this part of the case to the lower court for trial on the merits. The judgment of qualified immunity in favor of the City of South Houston is similarly REVERSED and REMANDED for trial on the merits of the defendant also. It is so ordered.

---

**10.** Mrs. Fields alleged five specific policies or customs: (1) permitting police officers to exercise unlimited discretion in the arrest and detention of citizens; (2) incarcerating persons arrested for offenses other than minor traffic offenses without benefit of medical attention, even when behavior indicative of medical problems is displayed; (3) permitting police officers to exercise unlimited discretion in deciding whether to provide medical care to a prisoner; (4) permitting police officers to exercise unlimited discretion in the handling of prisoners in the jail; and/or (5) incarcerating any person displaying erratic behavior until that person "sobers up" or "sleeps it off."