Samuel Andrew LESLIE, Plaintiff,

v.

INGALLS SHIPBUILDING,
INC., Defendant.

Civ. A. No. 1:94–cv–370(Br)(R).

United States District Court,
S.D. Mississippi,
Southern Division.

Aug. 22, 1995.

John F. Martin, Tupelo, MS, Richard L. Watters, Mobile, AL, for plaintiff.

Paul B. Eason, Jackson, MS, Kathryn R. Gilchrist, Jackson, MS, George M. Simmerman, Jr., Pascagoula, MS, Robert J. Ariatti, Jr., Pascagoula, MS, for defendant.

## MEMORANDUM OPINION

BRAMLETTE, District Judge.

This cause is before the Court on the defendant Ingalls Shipbuilding, Inc.'s motion for summary judgment. Having considered the motion and response, memoranda and supporting documents, and the applicable law, this Court finds the motion to be well-taken for the following reasons:

The plaintiff's complaint asserts that the defendant violated the Fair Labor Standards Act by failing to pay him time and a half for all the overtime he worked. The plaintiff, Samuel Leslie, spent his entire professional career at Ingalls, from 1956 until 1994. (Deposition of Samuel Leslie at p. 6). Over the course of his career, he held positions of significant responsibility in the Engineering Department, including Overhaul Engineer, Lead Field Engineer and Project Engineer. (Leslie Dep. at p. 11; Affidavit of J.V. Thorp). In 1983, Leslie was promoted to

Engineering Specialist. He continued to serve in that position until March of 1994, when he accepted Ingalls' early retirement offer. (Leslie Dep. at pp. 26–27). His annual salary during his last full year of employment with Ingalls was $63,489.60. (Annual Earnings Recap Summary for 1993). He filed his suit seeking overtime compensation on August 12, 1994, alleging that Ingalls violated the FLSA by failing to pay him overtime at one and one-half times his regular rate of pay. Ingalls contends that Leslie was exempt from the overtime provisions of the FLSA as a professional employee.

A grant of summary judgment is appropriate when, viewed in the light most favorable to the nonmoving party, "[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Dutcher v. Ingalls*, 53 F.3d 723, 725 (5th Cir.1995). "The moving party need not support its motion with affidavits or other evidence, but to defeat a motion for summary judgment the nonmovant must present evidence sufficient to establish the existence of each element of his claim as to which he will have the burden of proof at trial." *Pavone v. Mississippi Riverboat Amusement Corp.*, 52 F.3d 560, 565 (5th Cir.1995) (citations omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment … [T]here must be evidence on which the jury could reasonably find for the plaintiff." *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116 (5th Cir.1990).

The moving party bears the initial burden of establishing the absence of genuine issues of material fact. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.1990). Once the burden of the moving party is discharged, the burden shifts to the nonmoving party to go beyond the pleadings and show that summary judgment is inappropriate. *Id.* The nonmoving

party is obligated to oppose the motion either by referring to evidentiary material already in the record or by submitting additional evidentiary documents which set out specific facts indicating the existence of a genuine issue for trial. Fed.R.Civ.P. 56(e); *Fields v. City of South Houston*, 922 F.2d 1183, 1187 (5th Cir.1991). A party cannot satisfy its burden by referring back to the allegations of its pleadings. *Id.* If the nonmovant fails to satisfy its burden, summary judgment is required. *Id.*

For employees covered under its provisions, the FLSA generally requires overtime compensation of one and one-half times the regular rate of pay for time worked in excess of forty hours per workweek. *See* 29 U.S.C. § 207. Under the FLSA's enforcement provisions, employers violating the Act may be required to pay uncompensated overtime, together with civil penalties and liquidated damages. *See* 29 U.S.C. § 216. However, the FLSA exempts from its overtime requirements any salaried employee who works in a *bona fide* executive, administrative or professional capacity. 29 U.S.C. § 213(a)(1); *Smith v. City of Jackson*, 954 F.2d 296 (5th Cir.1992).

*The "Salary Test"*

The plaintiff contends that Ingalls' method of compensating him does not meet the requirements of the salary basis test for exemption from the FLSA. Specifically, he contends that he was not paid a guaranteed salary, but rather was paid by the hour, and that his salary was subject to deductions that are not permitted by the FLSA.

The FLSA provides that an employee is a salaried employee and not an hourly employee if he

> regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

29 C.F.R. § 541.118(a). An employer may, however, make deductions from a salaried employee's wages for absences of a full day or more for personal reasons or sickness. 29

C.F.R. § 541.118(a)(2). Moreover, an employee is not entitled to receive his guaranteed salary for any week in which he performs no work at all. 29 C.F.R. § 541.118(a).

■ Leslie makes two arguments in support of his conclusion that he was not paid a salary by Ingalls. First, he asserts that the provision of Ingalls' compensation policy requiring employees to take vacation time in order to be paid for certain time off from work violates the salary basis regulation. He claims specifically that his salary was improperly reduced when he was required to take accrued vacation time in order to be paid during the company's Christmas shutdown.

In *York v. City of Wichita Falls*, 944 F.2d 236 (5th Cir.1991), the Fifth Circuit held that requiring an employee to take sick leave or vacation time in order to be paid for time off does not establish that the employee is paid on an hourly or wage basis in violation of the salary basis regulation. In reaching this conclusion, the court stated:

> If a Battalion Chief or Fire Captain took an hour off work, his compensation remained the same and the time was deducted from his sick or vacation leave on an hourly basis. The relevant regulations provide that such deductions do not establish that a person is paid on a wage [hourly] basis. 29 C.F.R. § 541.118(b).

*Id.* at 242. *Accord, Keller v. City of Columbus*, 778 F.Supp. 1480, 1486 (S.D.Ind.1991); *International Ass'n of Fire Fighters, Alexandria Local 2141 v. City of Alexandria*, 720 F.Supp. 1230, 1232 (E.D.Va.1989), *aff'd*, 912 F.2d 463 (4th Cir.1990).

The regulation prohibits deductions from an employee's compensation for certain absences. 29 C.F.R. § 541.118(a)(1) and (2). When an employee is compensated for the time he was absent through the use of sick leave or vacation time, there is no deduction. The paycheck the employee receives is no less than it would have been if he had not been absent at all.

Leslie's argument is without merit for another reason as well. He was never required to take vacation in order to be paid for time off during any week in which he worked.

The only time he was required to use vacation to get paid when work was unavailable was during the annual Christmas shutdown, when Ingalls is closed for two full weeks. (Leslie Dep. at p. 31). The salary basis regulation specifically states that an employee is required to receive his full salary without deductions only for weeks in which he actually performs work. 29 C.F.R. § 541.118(a). Leslie did not have to use his vacation to get paid during the Christmas shutdown. He could have saved his vacation and not been paid, as the FLSA allows.

■ Leslie's second argument is based on the provision of the regulation that permits deductions from an employee's compensation for personal absences only when those absences are a "day or more." *See* 29 C.F.R. § 541.118(a)(2). He contends that Ingalls' policy violates this provision because it permits deductions for absences of eight or more consecutive hours over two days, based on the definition of a work day as eight consecutive work hours. However, the Court finds that such deductions are permitted by *York, supra*, 944 F.2d at 242. Moreover, Leslie must show more than a mere possibility of a deduction that violates a regulation under the FLSA in order to seize the rights of a nonexempt employee. *See McDonnell v. City of Omaha*, 999 F.2d 293, 297–98 (8th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 1188, 127 L.Ed.2d 538 (1994); *Atlanta Professional Firefighters Union v. City of Atlanta*, 920 F.2d 800, 805 (11th Cir.1991). Leslie concedes that he never had a deduction from his paycheck for a personal absence of less than a day. (Leslie Dep. at pp. 31, 37–38). Nor has he ever had a deduction for a personal absence of eight or more hours spanning two days, as revealed by his compensation records. (Affidavit of E.F. St. Amant, Jr.). Leslie's actual compensation throughout the relevant time frame was consistent with the salary basis regulation.

*The "Duties Test"*

To qualify for the professional exemption, one must have as his or her "primary duty" the "performance of work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a pro-

longed course of specialized intellectual instruction and study...." 29 C.F.R. § 541.3(a). In addition, an exempt professional's work must include the consistent exercise of discretion and judgment, and must be predominantly intellectual and varied in character. 29 C.F.R. § 541.3(b) and (c). Finally, a professional position must be of such character that the output produced cannot be standardized in relation to a given period of time. 29 C.F.R. § 541.3(c).

As with other exemptions, the essence of this test is to determine the plaintiff's chief or principal duty. *Paul v. Petroleum Equipment Tools Co.,* 708 F.2d 168, 170–71 (5th Cir.1983). The Fifth Circuit has defined the term "primary duty" to mean that over 50% of the employee's time must be spent performing exempt work. *Id.* at 170 (quoting 29 C.F.R. § 541.103).

The plaintiff held the position of Engineering Specialist throughout the relevant time frame. The requisite qualifications of the position confirm that it is professional in nature. The job description states that the usual minimum qualifications are a "Bachelor's Degree in an engineering discipline and a minimum of ten (10) years experience or an advance degree and seven (7) years experience." (Position Description for Engineering Specialist). The plaintiff left college shortly before receiving his degree in engineering; however, the majority of Engineering Specialists at Ingalls have engineering degrees, and many have advanced degrees. (Affidavit of J.V. Thorp). Leslie had three years of engineering study at Louisiana State University, and more than thirty years experience in the field of engineering as an Ingalls employee. Additionally, during his tenure with Ingalls, he attended a number of naval architecture courses and received numerous commendations for outstanding performance in engineering. (Letter of Recognition of Work Performance dated 1/14/87; Letter of 9/30/89; Letter of Appreciation dated 4/13/84; Memorandum dated 11/1/82).

The actual duties and responsibilities of the plaintiff's position also confirm his status as a professional employee. As an Engineering Specialist, the plaintiff performed work that was predominantly intellectual in nature and involved little, if any, manual labor or mechanical work. (Thorp Affidavit). An Engineering Specialist at Ingalls must carry out specialized and novel engineering assignments requiring the development of new and improved techniques and procedures, he must conduct theoretical analyses and develop practical solutions to dynamic problems and control systems, and he must conduct surveys or analyses of both technical and non-technical problems and perform preliminary design feasibility studies. (Position Description). Specifically, in his capacity as Engineering Specialist, Leslie was responsible for performing inspections of identified problem areas aboard various Navy ships. (Plaintiff's Response to Interrogatory No. 3); (Thorp Affidavit). Based on those inspections and Navy specifications, Leslie personally developed sketches and technical drawings. *Id.* From those sketches and drawings he worked out solutions to the problems identified. *Id.* These duties required him to have a thorough understanding of the specifications prepared by the Navy concerning the construction of all the ships on which he worked. (Leslie Dep. at p. 15).

In addition, the plaintiff was responsible for preparing structural specifications and standards, selecting major equipment items related to his field, and writing engineering progress and other technical reports. (Thorp Affidavit; Leslie Dep. at p. 16). Part of this particular duty included verifying that structural change made to the ship would be sound. (Leslie Dep. at p. 17). These duties and responsibilities took well over 50% of his time and consistently required the exercise of his independent judgment and discretion. (Leslie Dep. at p. 14; Thorp Affidavit). Written performance evaluations Leslie received from his supervisor state that he was "an extremely efficient and professional engineer" who handled large volumes of work "with little or no supervision." (Performance Evaluations dated 4/17/89, 3/27/90). The plaintiff's attempt to characterize his duties as identical to those of a "draftsman" is not supported by the undisputed facts. Additionally, the fact that he consulted others does not diminish the professional nature of his position.

The plaintiff's duties and responsibilities met the requirements for exemption as a professional employee under the duties test. Since he also qualified as an exempt employee under the salary test, he is not entitled to overtime pay, and summary judgment in favor of Ingalls is warranted. Accordingly,

IT IS HEREBY ORDERED that the defendant Ingalls Shipbuilding, Inc.'s motion for summary judgment is GRANTED.

An appropriate final judgment shall follow.

SO ORDERED.