United States Court of Appeals,

Eleventh Circuit.

No. 94-8730.

UNITED STATES of America, Plaintiff-Appellee,

v.

Donald DEROSE, Roberta Ould, Defendants-Appellants.

Feb. 14, 1996.

Appeals from the United States District Court for the Northern
District of Georgia. (No. 1:93-CR-236), Jack T. Camp, Judge.

Before HATCHETT and CARNES, Circuit Judges, and OWENS[*], Senior
District Judge.

HATCHETT, Circuit Judge:

A jury in the Northern District of Georgia convicted
appellants, Roberta Ould and Donald Derose, of one count of
possession with intent to distribute marijuana. On appeal,
appellants argue that the Speedy Trial Act and the Sixth Amendment
barred their prosecution; they also challenge the sufficiency of
the evidence that supports their convictions. We reverse.

FACTS

Ould and Derose's indictment and conviction stem from a
reverse sting operation DEA Agent Frank Smith conducted while
acting in an undercover capacity. Agent Smith utilized a
confidential informant who, at Smith's direction, advised
individuals in the community that she knew of someone who wanted to
sell marijuana. Ould subsequently contacted the confidential
informant and informed her that she had located a buyer who wanted

---

[*]Honorable Wilbur D. Owens, Jr., Senior U.S. District Judge
for the Middle District of Georgia, sitting by designation.

to purchase marijuana. Ould and the confidential informant made arrangements for the buyer, Derose, to meet Agent Smith at the Atlanta, Georgia, home of Ould's mother.

Ould, Agent Smith and the confidential informant met at Ould's mother's home on July 23, 1991. Agent Smith informed Ould that, due to safety considerations, he did not have the marijuana with him, but had stored it at a nearby location. Derose then entered the kitchen where the parties were located, and Ould introduced Agent Smith to Derose. Derose and Agent Smith left the kitchen and continued their conversation in the garage where Derose asked Agent Smith whether he had the marijuana with him. Agent Smith again replied that he had stored the marijuana at a nearby location. When Agent Smith asked Derose if he had the money for the marijuana, Derose showed Agent Smith a paper bag containing a large quantity of money. Ould then entered the garage and the parties began a discussion about the transfer of the marijuana.

Agent Smith informed Ould and Derose that the marijuana was located in a vehicle in a nearby parking lot and that once they arrived at the parking lot, he would give them the key to the vehicle so they could use the vehicle to transport the marijuana to Ould's mother's house. Agent Smith also stated that once the transfer of marijuana was completed, he would return to Ould's mother's house to retrieve the vehicle. Agent Smith and the confidential informant left Ould's mother's house in the agent's vehicle, and Ould and Derose followed them in another vehicle to a MARTA station parking lot. In the parking lot, Agent Smith again asked Derose if he could see the money for the marijuana, and

Derose showed him a paper bag that Agent Smith believed contained approximately $70,000 to $80,000. After showing Agent Smith the money, Derose exited the vehicle, and stated that the paper bag contained $70,000 and that he had given Ould $5,000.

Agent Smith then handed Derose the key to the rear compartment of a Ford Bronco containing the marijuana and informed Derose that he could inspect the marijuana to see if he liked it. Agent Smith also told Derose that if he did not like the marijuana, he would give Derose a couple of bucks so that he could head back up the road. Derose walked over to the Bronco, opened the rear window, and inspected the packages of marijuana. After Derose completed the inspection of the marijuana, he took the key out of the lock and walked away. Agent Smith then gave the arrest signal to previously positioned law enforcement officers who arrested Derose in the parking lot and Ould in the vehicle. A search of Ould and Derose's vehicle produced a paper bag containing $70,000 and an additional $5,000 in the glove compartment. Law enforcement officials videotaped the transaction in the parking lot.

PROCEDURAL HISTORY

On July 23, 1991, the day of the arrest, the government filed a criminal complaint charging Derose and Ould in connection with their unsuccessful attempt to procure marijuana. On July 25, 1991, a magistrate judge conducted a probable cause hearing, found probable cause, but released Derose and Ould on bond subject to pretrial supervision. One year and four days after the arrest, on July 27, 1992, the government filed a motion to dismiss the complaint. The magistrate judge entered an order dismissing the

complaint on July 30, 1992.  On May 19, 1993, the government obtained an indictment charging Ould and Derose with one count of conspiracy to possess with intent to distribute marijuana, in violation of 21 U.S.C. § 846, and one count of possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841.

In June 1993, Derose and Ould filed a motion to dismiss the indictment asserting that although the magistrate judge did not specify whether the dismissal of the original complaint was with prejudice, the dismissal should have been entered with prejudice based on a violation of the Speedy Trial Act, 18 U.S.C.A. § 3161 *et seq.* (West 1985), and the Due Process Clause of the Fifth Amendment.  Derose and Ould also asserted that the indictment should be dismissed for violating the Sixth Amendment's guarantee of a speedy trial.  Following a hearing, the magistrate judge recommended that the complaint be dismissed with prejudice.  The magistrate judge noted that the one-year delay between the probable cause hearing and the dismissal of the complaint was attributable to the "gross negligence" of the assistant United States attorney assigned to the case.  The magistrate judge did not recommend, however, that the entire indictment be dismissed;  rather, the magistrate judge recommended that only the charge contained in the dismissed complaint—the conspiracy charge—should be dismissed and that the defendants should stand trial on the substantive possession count.  The magistrate judge also rejected Derose and Ould's argument that the substantive count contained in the indictment should also be dismissed because it merely "gilded" the conspiracy count on the grounds that the substantive and conspiracy

charges were distinct offenses. Lastly, the magistrate judge, relying on *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), rejected the appellants' Sixth Amendment claim on the merits. The magistrate judge found that the length of delay, reason for the delay, and the defendant's assertion of the right each weighed slightly in Derose and Ould's favor, but concluded that they had not demonstrated prejudice as a result of the government's delay in prosecuting them. The magistrate judge reasoned that no prejudice existed because the reliability of the evidence consisting of Agent Smith's eyewitness testimony and audio and videotapes had not been eroded. Derose and Ould filed objections to the magistrate judge's report and recommendation that the substantive count should not be dismissed.

The district court overruled Ould and Derose's objections and adopted the magistrate judge's report and recommendation. The district court agreed with the magistrate judge's conclusion that the original indictment contained only a conspiracy charge, and that the gilding exception did not apply because the substantive and conspiracy charges contained separate elements. The district court also found that the Sixth Amendment right to a speedy trial was not implicated in this case because Derose and Ould were not accused of the substantive offense until the indictment was handed down, and because the length of time between the indictment and the trial—eight months—did not trigger a Sixth Amendment inquiry. Alternatively, the district court rejected the Sixth Amendment claim on the merits.

On January 13, 1994, Ould and Derose's trial commenced in the

United States District Court for the Northern District of Georgia. The jury returned a guilty verdict as to the sole remaining count of the indictment, possession with intent to distribute marijuana, on January 19, 1994. The district court sentenced Ould to eighteen months in prison and a three-year term of supervised release. Derose received a twenty-four month prison sentence and a three-year term of supervised release. The district court also ordered him to pay a fine of $4,000.

ISSUES

The issues are: (1) whether the indictment should have been dismissed as a violation of the Speedy Trial Act because the complaint contained the substantive charge; (2) whether the lower court erred in rejecting appellants' Sixth Amendment claim; and (3) whether the evidence was sufficient to support appellants' convictions.

CONTENTIONS

First, Ould and Derose contend that the initial complaint also contained the substantive possession charge because the complaint cited the substantive statute, 21 U.S.C. § 841(a)(1), and, as required, tracked its statutory language on the complaint form. Alternatively, they argue that this court should adopt the reasoning of *United States v. Nixon,* 634 F.2d 306 (5th Cir.1981), and recognize a "gilding" exception to the general rule that the Speedy Trial Act requires only the dismissal of a charge contained in a dismissed complaint. Second, Ould and Derose contend that the substantive count "gilded" the conspiracy count.

Next, Ould and Derose contend that the Sixth Amendment's

speedy trial limitations apply to preindictment delay once a defendant has been accused. They assert that the date of their arrest constitutes the starting point for the Sixth Amendment inquiry and that the Sixth Amendment applies to all charges resulting from their alleged criminal conduct.

Ould and Derose take issue with the weight the district court attributed to two of the *Barker* factors: the defendant's assertion of the right and reasons for the delay. They also assert that the district court erroneously held them to a higher burden of proof as to the fourth *Barker* factor—prejudice to the defendant—when it required a showing of significant actual prejudice. Lastly, Derose and Ould argue that Derose's mere possession of the key to the Bronco does not indicate that he had dominion or control over the marijuana. They claim that Derose never indicated to Agent Smith that the two had reached an agreement, and that his inspection of the marijuana constituted an insufficient basis for the finding that he had actual or constructive possession of the marijuana.

The government contends that the initial complaint contained only the conspiracy charge. It argues that the legislative history of the Speedy Trial Act suggests that the dismissal sanction should not be applied to subsequent charges merely because they arise from the same criminal transaction as those offenses charged in the original complaint. The government acknowledges that some courts have recognized a "gilding" exception to the Speedy Trial Act, but asserts that this court has never expressly adopted or applied this exception. Alternatively, the government asserts that the gilding exception is inapplicable to this case because the conspiracy and

substantive charges are separate and distinct offenses requiring proof of different elements.

The government also contends that the Sixth Amendment does not apply to this case because the appellants were not "accused" of the substantive charge until the grand jury handed down the indictment on May 19, 1993, ten months after the dismissal of the complaint. Additionally, the trial on the substantive possession charge commenced less than eight months after the date of the indictment and was, therefore, four months shy of the one-year delay period that has traditionally triggered the Sixth Amendment inquiry. Alternatively, the government argues that Ould and Derose's Sixth Amendment claim fails on the merits. Lastly, the government argues that because Derose possessed the key to the Bronco and reached into the Bronco and inspected the marijuana, he exercised sufficient dominion and control to constructively possess the drugs.

## DISCUSSION

A. The Speedy Trial Act

The Speedy Trial Act requires the government to file an indictment within thirty days from the date of the arrest or service of the summons. 18 U.S.C.A. § 3161(b) (West 1985). The government's failure to comply with this provision may lead to the dismissal of the charge against the defendant:

> If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) ... of this chapter, *such charge against that individual contained in such complaint shall be dismissed or otherwise dropped.*

18 U.S.C.A. § 3162(a)(1) (West 1985) (emphasis added). A dismissal

with prejudice, however, is not mandated upon a showing that the government failed to comply with the provisions of section 3161(b). Rather, section 3162(a) requires the district court to balance the statutory factors enumerated in that section in order to determine whether the government's preindictment delay merits a dismissal with prejudice. *United States v. Godoy,* 821 F.2d 1498, 1505 (11th Cir.1987); 18 U.S.C.A. § 3162(a) (West 1985). After considering the statutory factors, the choice of sanction is committed to the sound discretion of the district court. *Godoy,* 821 F.2d at 1505.

The parties do not challenge the district court's ruling that the original complaint contained a conspiracy charge that should be dismissed with prejudice as a result of the government's preindictment delay. Derose and Ould, however, contend that the complaint also contained a substantive charge—possession with intent to distribute—that should have been dismissed with prejudice. Whether Derose and Ould should have been subjected to trial on the indictment's second count charging them with possession with intent to distribute marijuana depends on a determination of whether the original complaint contained the substantive charge. *See* 18 U.S.C.A. § 3162(a)(1) (West 1985). The district court found that the complaint did not contain the substantive charge. We review factual determinations for clear error. *United States v. Dyal,* 868 F.2d 424, 426 (11th Cir.1989).

The July 23, 1991 criminal complaint against Derose and Ould alleged that they did "conspire to violate 21 U.S.C. section 841(a)(1), in that the defendants did knowingly and intentionally possess with intent to distribute a controlled substance...." We

agree with the district court's factual finding that the "best reading" of the complaint is that it contains only a conspiracy charge. Admittedly, the complaint tracked the statutory language of 21 U.S.C. § 841(a)(1) when it alleged that they "did knowingly and intentionally possess with intent to distribute a controlled substance." We reject, however, Derose and Ould's assertion that the mere presence of the statutory language of the substantive offense demonstrates that the complaint contained the substantive charge. A conspiracy allegation must state the substantive offense that the defendants conspired to violate. *See United States v. Stanley,* 24 F.3d 1314, 1319 (11th Cir.1994) (to prove conspiracy, the government must demonstrate that two or more persons agreed to commit the substantive offense); *see also United States v. Pollock,* 926 F.2d 1044, 1049 (11th Cir.1991). The district court's conclusion that the complaint contained only the conspiracy charge did not constitute clear error.

B. Gilding Exception to the Speedy Trial Act

Ould and Derose invite this court to adopt a gilding exception to the general rule that the Speedy Trial Act requires dismissal of only the charge contained in the complaint. They rely on *United States v. Nixon,* 634 F.2d 306, 309 (5th Cir.1981).[1] The *Nixon* court stated that " "[i]f the crimes for which a defendant is ultimately prosecuted really only gild the charge underlying his initial arrest and the different accusatorial dates between them

---

[1]Decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding precedent on the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (*en banc* ).

are not reasonably explicable, the initial arrest may well mark the speedy trial provision's applicability as to prosecution for all the interrelated offenses.' " *Nixon,* 634 F.2d at 309 (quoting *United States v. DeTienne,* 468 F.2d 151 (7th Cir.1972), *cert. denied,* 410 U.S. 911, 93 S.Ct. 974, 977, 35 L.Ed.2d 274 (1973)). Ould and Derose concede that the court in *Nixon* refused to apply the gilding exception to the facts of that case; however, they assert that this case is more suitable for its application. We disagree.

Initially, we note that we do not decide whether a gilding exception is even applicable to the Speedy Trial Act. But, assuming that such an exception exists, it would be inapplicable to the facts of this case. *Nixon* involved an initial arrest and subsequent voluntary dismissal on a charge of counterfeiting, and a subsequent indictment on a perjury charge arising from the defendant's testimony to a grand jury investigating the original counterfeiting allegation. The court in *Nixon* rejected the defendant's assertion that the Speedy Trial Act barred his later prosecution on the perjury charge on the grounds that the perjury charge gilded the counterfeiting charge: "Even though proof of perjury must rely in part on the same facts as would support a counterfeiting charge, perjury is a distinct and separate offense." *Nixon,* 634 F.2d at 309.

Ould and Derose attempt to distinguish this case from *Nixon* by arguing that the conspiracy and substantive counts in the complaint against them arose from the same events and that both charges are contained in the complaint. They contend, therefore, that

application of the gilding exception is appropriate here because the two counts are not separate and distinct. This argument suggests that Congress intended the Speedy Trial Act's dismissal sanction to apply when a later complaint is filed that arose out of the same transaction or occurrences that provided the basis for an earlier complaint which was dismissed. Moreover, the argument suggests that conspiracy charges necessarily guild the substantive offense due to the inability to divorce conspiracy allegations from substantive offenses. The appellants' argument lacks merit for two reasons. First, Congress considered and declined to follow the suggestion that the Speedy Trial Act's dismissal sanctions should be applied to a subsequent charge if it arose from the same criminal transaction or event as those detailed in the initial complaint or were known or reasonably should have been known at the time of filing the initial complaint. *United States v. Napolitano,* 761 F.2d 135, 137-38 (2d Cir.1985) (citing A. Partridge, Legislative History of Title I of the Speedy Trial Act of 1974, pp. 194-95, Federal Judicial Center, 1980). Second, it is well established that conspiracies and substantive offenses are separate and distinct offenses requiring proof of different elements. *E.g., Callanan v. United States,* 364 U.S. 587, 593, 81 S.Ct. 321, 325, 5 L.Ed.2d 312 (1961). Thus, it is questionable whether a substantive offense can ever gild a conspiracy charge, since they are separate and distinct offenses.

Although we are not deciding whether a gilding exception is even applicable to the Speedy Trial Act, we note that this court's decision in *United States v. Brooks,* 670 F.2d 148 (11th Cir.1982),

raises some doubt about the vitality of the gilding exception in this circuit. In *Brooks,* an inmate in a federal prison, while being escorted to administrative detention for threatening a correction officer, assaulted another correction officer. The inmate received a thirty-five day sentence in disciplinary segregation for his initial infraction of threatening a correction officer. During the inmate's thirty-five days in disciplinary segregation, another investigation began involving the assault on the second correction officer, which resulted in a federal grand jury indictment four months after that incident. The inmate moved to dismiss the indictment contending that the four-month interval between the commission of the offense and the indictment violated the Speedy Trial Act. The inmate argued that his placement in disciplinary segregation during an FBI investigation of his assault on the second correction officer constituted an "arrest" and that the four month delay between the time of his segregation and the issuance of the indictment violated the Speedy Trial Act.

This court agreed with the district court's rejection of the inmate's Speedy Trial Act motion on the ground that neither the administrative nor disciplinary segregation placed the inmate in the status of an accused so as to trigger the inmate's Sixth Amendment speedy trial rights or his right under the Speedy Trial Act. *Brooks,* 670 F.2d at 151. This court also agreed with the district court's finding that officials placed the inmate in disciplinary segregation because of his initial infraction of threatening the correction officer and not for his assault upon the correction officer. In affirming the district court's rulings,

this court stated that "an arrest triggers the running of section 3161(b) of the Speedy Trial Act *only if the arrest is for the same offense* for which the accused is subsequently indicted." *Brooks,* 670 F.2d at 151 (emphasis added). Thus, this passage raises some doubt as to the viability of the gilding exception in this circuit. While we do not decide the fate of the gilding exception in this ruling, we agree with the district court's conclusion that the substantive offense contained in the indictment did not gild the conspiracy charge found in the complaint.

C. Sixth Amendment Speedy Trial Guarantee

Ould and Derose contend that the delay in this case constituted a violation of their constitutional right to a speedy trial under the Sixth Amendment. They argue that the Supreme Court has interpreted the Sixth Amendment to limit preindictment delay once a defendant has been accused. *See Dillingham v. United States,* 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975). They also argue that because their indictment for the substantive offense of possession arose from the same activities that formed the basis of their earlier arrest for conspiracy, their Sixth Amendment speedy trial rights attached on the date of their original arrest. We disagree.

In *Dillingham,* the defendants were arrested or "accused" on charges of automobile theft in violation of 18 U.S.C. §§ 371, 2312, and 2313. The defendants were indicted twenty-two months after the arrest on those same charges. The Supreme Court found a Sixth Amendment violation. *Dillingham,* 423 U.S. at 65, 96 S.Ct. at 304. In this case, however, Ould and Derose were originally charged with

conspiracy under 21 U.S.C. § 846 in July 1991. These charges were dismissed in July 1992, but the government subsequently obtained an indictment in May of 1993 on conspiracy and the substantive possession charge. Since the district court ultimately dismissed the conspiracy charge, Ould and Derose may only claim a Speedy Trial Act violation for the possession charge. Notwithstanding the fact that proof of the possession charge relied on the same facts that supported the conspiracy charge, possession is a distinct and separate offense. *Callanan v. United States,* 364 U.S. 587, 593, 81 S.Ct. 321, 325, 5 L.Ed.2d 312 (1961). Therefore, Derose and Ould were not "accused" of the possession charge until the May 1993 indictment. The Sixth Amendment's Speedy Trial Clause does not attach before a defendant is accused or arrested. *United States v. Marion,* 404 U.S. 307, 317, 92 S.Ct. 455, 462, 30 L.Ed.2d 468 (1971).

The record also shows that the delay between the time of Derose and Ould's accusation and arrest and their trial for the possession charge was approximately eight months. This eight-month delay is insufficient to merit a Sixth Amendment speedy trial violation inquiry. *See Doggett v. United States,* 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 2691 n. 1, 120 L.Ed.2d 520 (1992) (recognizing that preaccusation delay approaching one year is the point at which courts deem the delay presumptively prejudicial and unreasonable enough to trigger the Sixth Amendment inquiry). Therefore, Ould and Derose have not demonstrated that their Sixth Amendment rights to a speedy trial have been implicated.

D. Sufficiency of the Evidence

Finally, Ould and Derose challenge the sufficiency of the evidence used to convict them. They argue that the evidence was insufficient to show that Derose had "possession" of the marijuana. They argue that at best the evidence shows that he had access to the marijuana rather than actual or constructive possession. We review the sufficiency of the evidence *de novo,* viewing all reasonable inferences in the light most favorable to the government. *United States v. Ramsdale,* 61 F.3d 825, 828 (11th Cir.1995).

We must decide whether the evidence in the record shows that Derose had actual or constructive possession. In order to find that a defendant has actual possession, we must find that the defendant either had physical possession or that he had actual personal dominion over the thing allegedly possessed. *United States v. Wynn,* 544 F.2d 786, 788 (5th Cir.1977). The record is devoid of any evidence demonstrating that Derose either physically placed marijuana in or removed marijuana from the back of the vehicle. Moreover, the record does not show that Derose actually drove the vehicle containing marijuana or possessed a key to the ignition of that vehicle. Therefore, the evidence in the record is insufficient to find that Derose had actual possession of the marijuana.

Derose's conviction may be upheld, however, if the record reveals that he had constructive possession of the marijuana. Constructive possession exists when a person "has knowledge of the thing possessed coupled with the ability to maintain control over it or reduce it to his physical possession even though he does not

have actual personal dominion." *Wynn,* 544 F.2d at 788. Similarly, a court may find constructive possession by finding ownership, dominion, or control over the contraband itself or dominion or control over the premises or the vehicle in which the contraband was concealed. *United States v. Martinez,* 588 F.2d 495, 498 (5th Cir.1979). The government, relying on *Martinez,* contends that Derose was in constructive possession of the marijuana at the moment he received the key to the vehicle containing the marijuana.

In *Martinez,* the defendant was pulled over by a Border Patrol agent. Minutes before the defendant was pulled over, the agent had stopped another vehicle driven by one Harmon. Harmon's vehicle reeked of marijuana, and the agent suspected that the marijuana was contained in the trunk of the vehicle. Harmon stated that he did not have a key to the trunk of the vehicle, and he also indicated that he knew the defendant who the agent suspected was following Harmon. The agent asked the defendant if he had a key to Harmon's vehicle, and the defendant indicated that he did. The agent took the keys from the defendant and opened both the trunk of Harmon's vehicle and the two chests contained in the trunk. The agent found marijuana. The court found that the defendant was in constructive possession of the marijuana found in Harmon's vehicle by virtue of his possession of the keys to the trunk and chests. *Martinez,* 588 F.2d at 498-99.

In this case, however, Agent Smith provided Derose with a key to the back hatch of the truck containing marijuana. The record shows that this key would not have started the vehicle, but only operated the back window. Moreover, the record revealed that

Derose, using the key, lowered the window, inspected the marijuana, and raised the window after which time he began to walk away. Derose did not own the vehicle; it was government property used as part of the sting operation.

A more telling aspect of this transaction which militates against finding that Derose had constructive possession is the absence of any evidence indicating the consummation of a deal to purchase the marijuana. The lack of an agreement between Derose and Agent Smith to actually sell or transfer the marijuana to Derose removes the indicia of "constructive possession" which may have arisen from Derose's mere possession of the key. Since the record shows that Derose neither agreed to purchase the marijuana before he received the key to the vehicle to inspect the marijuana nor signaled his acceptance after briefly inspecting the marijuana, we cannot find that he had dominion or control over the vehicle or marijuana or that he had the ability to reduce the marijuana to his actual possession.[2] Since the evidence against Derose is insufficient to sustain his conviction for possession of marijuana, Ould's conviction for aiding and abetting him cannot stand.

## CONCLUSION

For the foregoing reasons, we reverse the convictions of Donald Derose and Roberta Ould.

---

[2]We do not hold that receipt of a key coupled with an inspection of a vehicle containing drugs or other illegal substances can never form a basis for deeming a person to be in constructive possession. *See United States v. Martorano,* 709 F.2d 863, 871 (3d Cir.1983) (finding a defendant to be in constructive possession when he possessed a key to a vehicle containing a controlled substance and had previously entered into an agreement to purchase and transfer drugs).

REVERSED.