UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 96-2674
(CA-95-757)

John Allan Vogel,

Plaintiff - Appellant,

versus

American Home Products, etc., et al,

Defendants - Appellees.

O R D E R

The Court amends its opinion filed September 17, 1997, as follows:

On page 3, second full paragraph, line 1 -- the word "judgement" is corrected to read "judgment."

On page 8, first paragraph, line 5 -- the citation is corrected to read "29 C.F.R. § 541.118(a)(2)."

On page 8, second full paragraph, lines 6 and 7 -- a space is inserted in the citation between "F." and "Supp."

For the Court - By Direction

/s/ Patricia S. Connor

Clerk

**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOHN ALLAN VOGEL,
<u>Plaintiff-Appellant,</u>

v.

AMERICAN HOME PRODUCTS
CORPORATION SEVERANCE PAY PLAN;
WHITEHALL ROBINS COMPANY, a
division of A. H. Robins Company,
Incorporated, a wholly owned
subsidiary of American Home
Products, Incorporated,                              No. 96-2674
<u>Defendants-Appellees.</u>

and

WHITEHALL ROBINS SEVERANCE PAY
PLAN; AMERICAN HOME PRODUCTS
CORPORATION/Whitehall Robins, a
division of American Home
Products Corporation, WHITEHALL
ROBINS, INCORPORATED,
<u>Defendants.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge.
(CA-95-757)

Argued: July 18, 1997

Decided: September 17, 1997

Before ERVIN, Circuit Judge, and BUTZNER and
PHILLIPS, Senior Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** John Bertram Mann, LEVIT & MANN, Richmond, Virginia, for Appellant. Daryl Eugene Webb, Jr., MAYS & VALENTINE, L.L.P., Richmond, Virginia, for Appellees. **ON BRIEF:** Kimberly W. Daniel, MAYS & VALENTINE, L.L.P., Richmond, Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

John Allan Vogel filed suit in federal district court against Whitehall Robins Company and American Home Products, Inc. Severance Pay Plan (hereinafter collectively referred to as Whitehall Robins) claiming racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., unpaid overtime compensation under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq., unlawful denial of severance benefits in violation of the Employment Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461, and retaliation.**1** Upon Whitehall Robins' motion for summary judgment,

---

**1** Vogel's retaliation claim specified the following:

> Whitehall-Robins refused to give to Vogel his severance pay, out-placement counseling, and continued health benefits in retaliation for his stating his intention to file a charge with the EEOC in violation of both Title VII of the Civil Rights Act of 1964 as amended and the ADEA.

J.A. at 16.

2

the district court granted summary judgment for Whitehall Robins on all claims. For the reasons hereinafter explored, we affirm the decision of the district court.

I.

Vogel was employed by Whitehall Robins, a division of the A.H. Robins Company (Robins) which is owned by American Home Products Corporation (AHPC). After AHPC acquired Robins in 1989, the management of Whitehall Robins decided to consolidate the two credit and collections departments that existed within the division, the Whitehall department and the consumer products department. At that time, Vogel, a white man, was the credit manager of consumer products and Richard Byrd, a black man, was the credit manager of Whitehall. Byrd was chosen to head up the consolidated department and Vogel was terminated because his position was eliminated.

II.

We must review the district court's grant of summary judgment in favor of Whitehall Robins de novo on appeal, applying the same standard used by the district court itself. See Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 233 (4th Cir. 1991). "[T]he nonmoving party is entitled to have his evidence as forecast assumed, his version of that in dispute accepted, and the benefit of all favorable inferences." Id. at 233. See also E.E.O.C. v. Clay Printing Co., 955 F.2d 936, 940 (4th Cir. 1992).

III.

A.

Whitehall Robins argues that Vogel's race and age discrimination claims, and his retaliation claim, were not timely filed. Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1), federal discrimination claims must be filed within 90 days after the EEOC gives the claimant notice of his right to sue.[2] Vogel counters

_____

[2] The 90-day statute of limitations applies both to the discrimination and retaliation claims. Even though the district court concluded that Vogel's retaliation claim fails on the merits, we need not enter that discussion.

3

that, because the first right-to-sue letter arrived at an address from which he had already moved, and without his knowledge, the doctrine of equitable tolling should have extended the 90-day time period for filing a discrimination suit until after he had actually received the letter.

Vogel filed a charge with the EEOC on December 27, 1994, and the EEOC informed him by letter on March 9, 1995, that he must keep the EEOC abreast of any changes in his mailing address. Next, the EEOC mailed him his right to sue letter on September 26, 1995, but the certified letter was returned to the EEOC as unclaimed. Not until October 26, 1995, did Vogel notify the EEOC of his address change. Finally, on December 15, 1995, the EEOC mailed a second copy of the September letter to Vogel's new address. Vogel did not file his complaint until March 14, 1996.

The district court applied the presumption set forth in Fed. R. Civ. P. 6(e) to conclude that Vogel had received constructive notice of his right to sue three days after the EEOC mailed the first letter, in other words on September 29, 1995, making Vogel's March 14, 1996, complaint untimely. Dismissing the Rule 6(e) presumption as inapplicable, Vogel interprets the tolling doctrine as not starting the 90 day clock running until December 18, 1995, the day he received the EEOC's second notice. Thus, according to Vogel, his March 14 filing was timely.

The Supreme Court has established the rule that filing of a timely charge of discrimination with the EEOC is subject to equitable tolling. See Zipes v. Transworld Airlines, Inc., 455 U.S. 385, 393 (1982). The Court has also specifically stated that this tolling may extend the 90-day period given in which to file a suit after receiving a right-to-sue letter. See Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147 (1984). However, in applying the rule from Brown in this Circuit, we have held that the doctrine of equitable tolling does not apply where the plaintiff's failure to notify the EEOC of an address change after agreeing to do so resulted in a lack of actual notice. See Harper v. Burgess, 701 F.2d 29, 30 (4th Cir. 1983). The Seventh Circuit has pointed out that a plaintiff bears the burden of ensuring that a right-to-sue letter is sent to his proper address:

4

Since 1977 people who have filed charges with the EEOC have been required to notify the Commission of any change of address. 42 Fed. Reg. 47,833 (Sept. 22, 1977). The regulation, 29 C.F.R. § 1601.7(b) (1981), makes mandatory that which is dictated by common sense. The regulation provides that a person who has filed a Title VII charge "has the responsibility to provide the Commission with the notice of any change in address and with notice of any prolonged absence from that current address so that he or she can be located when necessary during the Commission's consideration of the charge." Id. The burden of providing the EEOC with changes of address is minimal. It is unreasonable to expect EEOC to pour over its files, and those of state administrative agencies, in an effort to ascertain which of the addresses contained therein is correct.

St. Louis v. Alverno College, 744 F.2d 1314, 1316 (7th Cir. 1984). We agree with the logic of our sister circuit.

A central factor in determining when the limitations period is triggered is the extent to which the claimant's failure to receive actual knowledge of the letter was due to fault of his own. In Watts-Means v. Prince George's Family Crisis Ctr., 7 F.3d 40 (4th Cir. 1993), we found that the limitations period was triggered when the claimant received notice that she could pick up her letter at the post office. In Harvey v. City of New Bern Police Dept., 813 F.2d 652 (4th Cir. 1987), equitable tolling was not applied where the claimant's wife signed for the letter and he did not become aware of it until he returned from a trip.[3] Under similar circumstances, the claimant neither received an extension in Espanoza v. Missouri Pac. Ry. Co., 754 F.2d 1247 (5th Cir. 1985), nor in Bell v. Eagle Motor Lines, 693 F.2d 1086 (11th Cir. 1982). In Sanderlin v. La Petite Academy, Inc., 637 F.Supp. 1166 (E.D. Va. 1986), the claimant was held to the 90-day statute of limitations even though she was out of town and the EEOC letter was signed for by her husband. By contrast, the 90-day period was tolled where notice was received by the claimant's nine-year-old

_____

[3] This case explicitly rejected the "actual receipt" rule then extant in the Seventh Circuit which had been established by Archie v. Chicago Truck Drivers, 585 F.2d 210 (7th Cir. 1978).

5

nephew who lost the letter and never told the claimant that the letter had even arrived. Franks v. Bowman Transp. Co., 495 F.2d 398 (5th Cir. 1974), rev'd on other grounds, 424 U.S. 747 (1976).

Vogel had filed charges with the EEOC, he had been notified by the Commission that he should inform them of any address change, and he bore an obligation under the federal regulations to do so; thus, Vogel's case is even less compelling than those mentioned above where the tolling doctrine was not employed. Accordingly, the district court did not err in finding that Vogel received notice of his right to sue on September 29, 1995, and holding that Vogel's March 14, 1995 claims of race and age discrimination were untimely.[4] We further conclude that Vogel's claim of retaliation is subject to a procedural default because it was also untimely filed.

B.

Vogel next claims that he is due overtime compensation and interest for those hours that he worked over a 40-hour week because, he argues, he was not employed "on a salaried basis" and thus was exempt from the FLSA.

The FLSA requires that employers pay their covered employees overtime wages, at a rate of time-and-a-half, for hours in excess of 40 in a single week. Overtime wages are not required to be paid to employees who meet certain "white collar exemptions" by virtue of serving in an executive, administrative, or professional capacity. See 29 U.S.C. § 213(a)(1). The Secretary of Labor is responsible for delineating those circumstances under which white collar exemptions are appropriate. Pursuant to 29 C.F.R. § 541.118, employees whose positions are characterized by professional, administrative, or executive duties and are paid on a salary basis are exempt from the FLSA overtime requirements. Shockley v. City of Newport News, 997 F.2d 18, 21 (4th Cir. 1993). In the instant case, Vogel does not argue that

_____

[4] We note that even after Vogel received the second copy of the September 26, 1995, right-to-sue letter on December 18, 1995, he still had ten days to file suit under the 90-day statute which began running on September 29th. Further, Vogel had the benefit of counsel during this entire process.

6

he was nonexempt based on his duties, but rather on his method of compensation.

The employer bears the burden of demonstrating by clear and convincing evidence that an employee meets the FLSA exemption. <u>See Shockley</u>, 997 F.2d at 21-22.

The FLSA salary basis exemption states that

> (a) An employee will be considered to be paid"on a salaried basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, <u>which amount is not subject to reduction because of variations in the quality or quantity of the work performed</u>. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work <u>without regard to the number of days or hours worked</u>.
> . . .

29 C.F.R. § 541.118 (emphasis added).

Vogel points to four of Whitehall Robins' policies for the proposition that he was not a salaried employee: 1) maintaining a summer work schedule setting work hours for its salaried employees; 2) requiring exempt employees to take vacations in one-half-day increments for vacations taken on Fridays during the summer schedule (May 27-August 30); 3) providing overtime compensation for salaried exempt employees; and 4) requiring Vogel to report his absences to his supervisors in spite of the fact that he was considered to be a salaried employee.

Whitehall Robins' requirements that employees, salaried and hourly alike, follow a summer work schedule and report absences to supervisors are not, on their face, violative of 29 C.F.R. § 541.118. The regulation simply states that <u>salaries</u> not be <u>subject to reductions</u> based on the amount of time worked. Further, the regulation lists exceptions to this rule; however, those exceptions only spell out per-

7

missible reasons for making <u>deductions in salary</u>. Specifically, the regulation provides that, if the employee is to remain exempt, an employer can only make deductions from the employee's salary for absences of <u>a day or more</u> for personal reasons, other than sickness or accident. <u>see</u> 29 C.F.R. § 541.118(a)(2). The regulations do not, however, prohibit an employer from using an employee's time records for other disciplinary purposes or, as with Whitehall Robins, from carrying out a Weekly Sickness and Accident Plan.

Vogel also argues that his employer's overtime compensation policy places him outside the salaried employee exemption. First, the deposition of the division's Wage and Salary Administrator Michael Hale indicates that Vogel was not an exempt employee eligible for overtime pay. Whitehall Robins' policy statement clearly stated that "[e]xempt overtime compensation will not be paid to positions responsible for authorizing, approving or scheduling overtime." J.A. at 72. According to Hale, Vogel held such a position.

Even if Vogel had been eligible for, and received, overtime-- which, according to the record, he did not--we conclude that because the regulations specifically allow for additional compensation, overtime pay alone does not affect an employee's salaried status.[5] <u>See, e.g.</u>, <u>York v. City of Wichita Falls</u>, 944 F.2d 236, 242 (5th Cir. 1991); <u>Quirk v. Baltimore County</u>, 895 F. Supp. 773, 781 (D. Md. 1995); <u>Hartman v. Arlington County</u>, 720 F. Supp. 1227 (E.D. Va. 1989), <u>aff'd</u> on reasoning of lower court, 903 F.2d 290 (4th Cir. 1990); <u>but see Abshire v. County of Kern</u>, 908 F.2d 483, 486 (9th Cir. 1990), <u>cert. denied</u>, 498 U.S. 1068 (1991) (deciding that additional compensation in the form of one hour of compensatory time off for every hour of overtime worked is "not generally consistent with salaried status.").[6]

_____

[5] "[A]dditional compensation besides salary is not inconsistent with the salary basis payment." 29 C.F.R. § 541.118(b).

[6] The district court unnecessarily relies on dicta in a footnote in <u>Abshire</u> to support its conclusion that overtime will not affect the salaried status of an employee who only receives it on "special occasions." J.A. at 47. We, however, have not required such a restricted application.

8

Finally, Vogel contends that he was not paid on a salaried basis because he was required to take vacation leave under the summer schedule in at least one-half-day increments. The policy in question allows that, "[w]hile separate [vacation] days may be taken, if approved, <u>no less</u> than one-half day can be taken and charged to vacation time." J.A. at 68 (emphasis in original).

Vogel implies that the policy does not fall within the exception to the salaried exemption which states that "deductions may be made . . . when the employee absents himself from work <u>for a day or more</u> for personal reasons, other than sickness or accident." 29 C.F.R. § 541.118(a)(2). He essentially argues that docking vacation time in increments of less than one day is equivalent to docking his salary for absences of less than one day.

Based on Vogel's contention, the relevant question under § 541.118(a) of the regulations becomes whether Vogel was "subject to" a pay deduction for taking personal leave.[7] Salary has generally

_____

[7] The Supreme Court recently addressed the issue of whether a public-sector employer's policy language is controlling where the language does not comport with the employer's actual practice. The Court adopted the Secretary of Labor's interpretation of the salary basis test:

> [T]he salary-basis test . . . den[ies] exempt status when employees are covered by a policy that permits disciplinary or other deductions in pay "as a practical matter." That standard is met . . . if there is either an actual practice of making such deductions or an employment policy that creates a "significant likelihood" of such deductions. The Secretary's approach rejects a wooden requirement of actual deductions, but in their absence it requires a clear and particularized policy--one which "effectively communicates" that deductions will be made in specified circumstances. This avoids the imposition of massive and unanticipated overtime liability . . . in situations in which a vague or broadly worded policy is nominally applicable to a whole range of personnel but is not "significantly likely" to be invoked against salaried employees.

<u>Auer v. Robbins</u>, 117 S.Ct. 905, 911 (1997) (citations omitted). Vogel, however, does not argue about what deductions are likely to happen; rather, he asserts that impermissible deductions from his salary <u>did</u> take place in the form of reduced leave.

9

been given its common meaning by the courts, an employee's monetary compensation. Vogel notes that district courts have addressed, more squarely than have the circuit courts, the question of whether leave time is part of a salary. See e.g., Thomas v. County of Fairfax, 758 F. Supp. 353, 366 n.24 (E.D. Va. 1991) (finding that "in the company of other factors indicative of an hourly payment scheme, the docking of leave weighs in favor of a finding of non-salaried status."); Service Employees Int'l v. County of San Diego, 784 F. Supp. 1503, 1510-1511 (S.D. Cal. 1992) ("[T]he docking of an employee's leave time for absences from work is as contrary to the notion of salaried status as the docking of base pay.").

A district court in our circuit has expressed the view, in contrast to that of Thomas and Service Employees, that salary deductions only refer to monetary deductions from an employee's base pay:

> Under 29 C.F.R. § 541.118(a), an employee is considered salaried when he regularly receives a predetermined amount constituting all or part of his compensation. While personal leave, sick leave and/or compensatory time may be part of an employee's compensation package, it does not constitute salary. Moreover, in a July 17, 1987 letter ruling interpreting agency regulations, the Department of Labor stated that while deductions in salary are not permitted for absences of less than a day, an employer may require an employee to substitute paid leave for such absences without losing the exemption. See Administrative Letter Rulings: Department of Labor, Wage and Hour Division, July 17, 1987.

Fire Fighters Local 2141 v. City of Alexandria, 720 F. Supp. 1230 (E.D. Va. 1989), aff'd, 912 F.2d 463 (4th Cir. 1990). The Fifth Circuit also weighed in on the question of whether leave constitutes part of a salary:

> If a[n] . . . [employee] took an hour off work, his compensation remained the same and the time was deducted from his sick or vacation leave on an hourly basis. The relevant regulations provide that such deductions do not establish that a person is paid on a wage basis.

10

York v. City of Wichita Falls, 944 F.2d 236, 242 (5th Cir. 1991) (citing 29 C.F.R. § 541.118(b)); see also Leslie v. Ingalls Shipbuilding, Inc., 899 F. Supp. 1578, 1581 (S.D. Miss. 1995).

Although the courts are not unanimous on the issue of whether docking an employee's vacation violates his exempt status, given that no monetary deductions were made from Vogel's base salary and he does not argue that any were likely, we endorse the reasoning of Fire Fighters and conclude that Vogel remained exempt from the FLSA overtime compensation requirements.

C.

Vogel next argues that he was wrongly denied severance pay to which he was entitled under Whitehall Robins' ERISA plan. See 29 U.S.C. §§ 1001-1461 (1988). He maintains that Whitehall Robins' ERISA plan was wholly contained in a document prepared by the company (referred to as the AHT) to explain the reorganization and its impact on the corporate budget. This AHT also discussed certain eligibility requirements for severance benefits.

Vogel does not dispute that the following documents were available to him: 1) the AHT 2) the company's general policy statement; 3) a description of the company's plan; 4) a general release required to be signed before plan benefits could be received; and 5) a memorandum to employees notifying them that a general release must be executed before severance benefits could be collected. If the general release were indeed part of Whitehall Robins' ERISA plan, the fact that Vogel refused to sign it made him ineligible for severance pay. Vogel, however, while not denying the existence of the other documents Whitehall Robins alleges comprise the plan, argues that the AHT is the only plan document. Vogel is correct that the AHT did not refer to a separate release form to be signed by those employees involuntarily retired in order for them to be eligible for severance pay; however, the documents published by the company after the AHT made this requirement clear.

Severance plans are welfare benefit plans under ERISA, 29 U.S.C. § 1002(1), and a plan need not be made up of one formal document. See Schonholz v. Long Island Jewish Medical Center, 87 F.3d 72 (2d

11

Cir. 1996). Thus, the district court found that the release was either part of a multi-document plan or, if not, it was a permissible amendment to the original plan. The lower court did not err when it determined that, even if the release were a procedural violation of ERISA, the amendment would be allowed if Whitehall Robins did not act in bad faith or attempt to conceal the amendment from Vogel. See Kreutzer v. A.O. Smith Corp., 951 F.2d 739, 743 (7th Cir. 1991) ("[T]he employer must have acted in bad faith, actively concealed the benefit plan, or otherwise prejudiced their employees by inducing their reliance on a faulty plan summary before recovery for procedural violations is warranted.") (citations omitted). In fact, Vogel, and all others who were eligible for severance benefits and were being terminated, were notified before their termination of the requirement that a release be signed.

The district court found that Vogel was not wrongfully denied benefits because 1) Whitehall Robins did not violate ERISA and 2) Vogel refused to sign the release form as required of all eligible terminated employees. Even construing the facts in Vogel's favor, we conclude that the district court was not in error.

IV.

Since Vogel was under an affirmative obligation to keep the EEOC abreast of his correct address, and even the Commission's second notice gave him time to file his suit within 90 days of the constructive notice, the statute of limitations bars Vogel's ADEA, Title VII and retaliation claims. Further, Vogel qualified as an FLSA-exempt employee and, as such, was not entitled to overtime compensation. Finally, Whitehall Robins did not violate ERISA and, since Vogel declined to sign the company's general release, he is not entitled to severance pay under the company plan. Therefore, the disposition of the district court is

AFFIRMED.

12